(12138.—Writ awarded.)

THE STATE PUBLIC UTILITIES COMMISSION, Petitioner, *vs.* ALBERT D. EARLY *et al.* Respondents.

*Opinion filed October 21, 1918—Rehearing denied Dec. 11, 1918.*

1. CIVIL SERVICE—*section 6 of State Civil Service act construed as to question of residence.* The provision of section 6 of the State Civil Service act that examinations shall be free to citizens of Illinois, with limitations specified in the rules of the commission as to residence, etc., provided that in examinations for technical positions residence may be waived, refers merely to residence in different parts of the State of Illinois and does not authorize the commission to include persons not citizens of Illinois.

2. SAME—*person not a citizen of Illinois is not eligible for technical position.* Under section 6 of the State Civil Service act, properly construed, a person who is not a citizen and resident of the State of Illinois is not eligible for examination, certification and appointment to a technical position in the classified civil service of the State.

3. STATUTES—*proviso will not be construed to enlarge the enactment.* A proviso in a statute is to be construed strictly, and its legitimate office is to qualify what is affirmed in the body of the act, section or paragraph preceding it, or to except something therefrom, but not to enlarge the enactment.

CARTWRIGHT, CARTER and DUNN, JJ., dissenting.

ORIGINAL petition for *mandamus.*

EDWARD J. BRUNDAGE, Attorney General, and CLARENCE N. BOORD, for petitioner.

ALBERT D. RODENBERG, and ERNST FREUND, (ALBERT D. EARLY, and RUSSELL WHITMAN, of counsel,) for respondents.

Mr. JUSTICE STONE delivered the opinion of the court:

The Public Utilities Commission, upon leave had, filed its original petition for a writ of *mandamus* to compel the State Civil Service Commission to cancel the certification

of the respondent Albert N. Richardson and immediately thereafter to certify to the petitioner the name and address of the candidate standing highest upon the register of eligibles for the position of service engineer, in accordance with section 10 of the act of May 11, 1905, as subsequently amended, entitled "An act to regulate the civil service of the State of Illinois," approved May 11, 1905, in force November 1, 1905.

The position of service engineer is included in the classified civil service of the State, and the appointment of such service engineer is authorized to be made by the petitioner subject to the provisions of the above act. Under the provisions of the act the civil service commission held an examination on or about April 7, 1917, open to applicants for the position of service engineer. In advance of such examination the civil service commission formulated a rule, and gave notice thereof, that the examination for service engineer would not be confined to residents of Illinois but that such examination would be free to all citizens of the United States. It is conceded that this position is a technical one. Albert N. Richardson at that time resided at Kansas City, Missouri, and was not, nor did he claim to be, a citizen of the State of Illinois or to reside therein. He took the examination so advertised and stood sixth on the list of those eligible for appointment to said position. Owing to previous military service during the Spanish-American war he was placed at the head of the list of eligibles to be certified for appointment to said position. On July 2, 1917, he was certified by the civil service commission as an eligible for such appointment. The petitioner refused to accept the certification and refused to appoint Richardson on the grounds that at the time he took the civil service examination for such position he was not a citizen or resident of the State of Illinois but resided at Kansas City, Missouri, and that, conceding the position of service engineer is a technical one, the commission is without authority to certify for appoint-

ment any person not a citizen and resident of the State of Illinois. A second written request or requisition for an eligible for appointment to said position having been made on the civil service commission and by it declined, the petitioner filed the petition herein. The respondents demurred to said petition, and the cause now comes on said petition and demurrer.

The question to be decided is whether or not a person who is not a citizen and resident of the State of Illinois is eligible for examination, certification and appointment to the position of service engineer under the classified civil service of this State. The decision of this question depends upon the construction to be placed upon that part of section 6 of the foregoing act which reads as follows: "All applicants for offices or places in said classified service, except those mentioned in section 11 hereof, shall be subjected to examination, which shall be public, competitive and free to all citizens of the State of Illinois who may be lawfully appointed to any office or place in the service of the State of Illinois, with limitations specified in the rules of the commission as to residence, age, sex, health, habits, moral character and qualifications to perform the duties of the office or place to be filled, which qualifications shall be prescribed by rule in advance of such examination: *Provided, however,* that in examinations for technical positions residence may be waived."

It is contended by respondents that the provision, *"Provided, however,* that in examinations for technical positions residence may be waived," gives to the civil service commission the authority to certify for appointment to such position a person not a citizen or resident of Illinois.

In the construction of statutes courts seek to find and give effect to the intention of the legislature. A review of the civil service acts passed by the legislature will afford some evidence of the legislative intent in the act in question. The first Civil Service act passed by the legislature of

this State was "An act to regulate the civil service of cities," approved and in force March 20, 1895. Section 6 of that act provides, in part, as follows: "All applicants for offices or places in said classified service, except those mentioned in section 11, shall be subjected to examination, which shall be public, competitive and free to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character." (Hurd's Stat. 1917, par. 451, p. 476.) The next Civil Service act was passed in 1895 and was in force July 1 of that year and related to civil service in counties. It amended section 61 of an act to revise the law in relation to counties, approved March 31, 1874, and is in part as follows: "Fifteenth—All applicants for offices or places in said classified service, except those mentioned in the twentieth paragraph of this section, shall be subjected to examination, which shall be public, competitive and free to all citizens of the United States, with specified limitations as to residence, age, health, habits and moral character." (Hurd's Stat. 1917, p. 800.) The first State Civil Service law, approved May 11, 1905, in force November 1, 1905, was entitled "An act to regulate the civil service of the State of Illinois," section 6 of which was in part as follows: "All applicants for offices or places in said classified service, except those mentioned in section 11, shall be subjected to examination, which shall be public, competitive and free to all citizens of the State of Illinois, with limitations specified in the rules of the commission as to residence, age, sex, health, habits, and moral character." (Laws of 1905, p. 115.) This section of the act was amended by an act approved June 10, 1911, in force July 1, 1911, and as amended is the section of the act here in question as hereinbefore set out. The legislature also passed in 1911 an act relating to civil service in park systems, also approved June 10, 1911, in force July 1, 1911, section 6 of which provides as follows: "All applicants for offices or places in said classified civil service, except those

mentioned in section 11 hereof, shall be subjected to examination, which shall be public, competitive and free to all persons who may be lawfully appointed thereto with limitations specified in the rules of the board as to residence, age, sex, health, habits, moral character and qualifications to perform the duties of the office or place to be filled, which qualifications shall be prescribed in advance of such examination." (Hurd's Stat. 1917, par. 78, p. 632.)

By the city and county acts examinations are open to "all citizens of the United States, with specified limitations as to residence," etc. Under the State Civil Service act of 1905 examinations were open "to all citizens of the State of Illinois, with limitations specified in the rules of the commission as to residence," etc. That act was amended in 1911 by inserting after the words "citizens of the State of Illinois," the words "who may be lawfully appointed to any office or place in the service of the State of Illinois," also adding the proviso in question here. It will be also noted that the Park Civil Service act passed in 1911 opened the examinations "to all persons who may be lawfully appointed thereto with limitations specified in the rules of the board as to residence," etc. These acts also provided that the commission or board shall make rules to carry out the purpose of the acts and provide for the promulgation of such.

It is apparent that the class of persons to whom the rules of the civil service commission limiting residence could apply, under the act in question, are citizens of the State of Illinois. It is likewise evident that the legislature did not intend the use of the term "residence" as synonymous with "citizenship," but did intend to give to the civil service commission power to prescribe the residence of the citizens of the State of Illinois who may take such examinations. Citizenship is a status or condition and is the result of both act and intent. While in some States the term "citizenship" is taken as synonymous with "residence," such

has not been the rule in this State. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Monaghan*, 140 Ill. 474; *Darst* v. *Bates*, 51 id. 439.) It will be seen that the legislature by the different acts intended the privileges of examination should be extended to different persons. Section 6 of the act in question by the amendment of 1911 limited the citizens of Illinois who may take such examinations to those "who may be appointed to any office or place in the service of the State of Illinois." This is an additional limitation to the act of 1905. The act is first a grant of privilege, clearly specifying the class of persons who may enjoy such privilege. It then proceeds to place certain limitations on that privilege and likewise limitations on the class of persons who may enjoy it. In doing so the act empowers the civil service commission to make those limitations by rules. Among those limitations is that as to residence. The clear and ordinary meaning of the language, "with limitations specified in the rules of the commission as to residence," is that the civil service commission may limit the privilege enjoyed by "citizens of the State of Illinois who may be lawfully appointed to any office or place in the service of the State of Illinois," by determining by rule the residence of such "citizens of the State of Illinois."

A limitation is a restriction and not an enlargement. The power of this commission to make limitations as to residence is the power to restrict the class of persons specified as eligible to take these examinations but not to enlarge that class. This commission cannot, by rule of limitation as to residence, enlarge the class of persons who may take these examinations to include persons not citizens of Illinois. It is a rule of construction that a word or term used in different clauses of a statute will be given the same meaning in each instance, in the absence of anything in the context of the statute to indicate that the legislature intended to attach to it some other and different meaning. (*People* v. *Busse*, 240 Ill. 338; *Rhodes* v. *Welty*, 46 Ohio

St. 234; *P. T. C. Co.* v. *F. R. R. Co.* 96 Va. 669.) There
is nothing in the context of the act in question to indicate
that the legislature intended to attach to the term "resi-
dence," as used in the proviso to section 6 of the act, any
different meaning from that which, as we have seen, it bears
in the body of the act. That term as used in the proviso
is therefore to be construed as having the same meaning
as in the body of the act,—that is, the residence which the
commission has the power to waive is the residence of citi-
zens of the State of Illinois. To hold that the commission
may waive the requirement of citizenship is to give that
commission, which is not a legislative body, the power to
set aside a plain provision of the statute fixing the class
of persons who may take these examinations and to bring
within the provisions of the act persons not enumerated
therein as having such privilege. There is nothing in the
act to denote an intention on the part of the legislature
so to do, nor is such within the province of a proviso.

It is a rule of construction that a proviso in a statute
is to be construed strictly. It is intended to qualify what
is affirmed in the body of the act, section or paragraph pre-
ceding it or to except something from the body of the act
but not to enlarge the enactment, for to do so would be to
operate as a substantive enactment itself. This is not the
legitimate office of a proviso. *In re Day,* 181 Ill. 73; *De-
Graff* v. *Went,* 164 id. 485; Potter's Dwarris on Stat. 118,
note 11; *Boon* v. *Juliet,* 1 Scam. 258; *Borders* v. *Borders,*
4 id. 341; *Huddleston* v. *Francis,* 124 Ill. 195; *City of
Chicago* v. *Phœnix Ins. Co.* 126 id. 276; *Voorhees* v. *United
States,* 10 Pet. 449.

It is urged that a construction limiting the selection of
applicants for technical positions will result in injury to the
technical service of the State. This contention is one hav-
ing to do with the wisdom of the enactment of the law
rather than its construction. Whether or not a law ought
to have been enacted is a matter with which this court has

nothing to do but which rests in the sound discretion of the legislature.

The demurrer to the petition is overruled and the writ of *mandamus* awarded.

*Writ awarded.*

CARTWRIGHT, CARTER and DUNN, JJ., dissenting:

The object to be attained in construing a legislative act is to ascertain the intention of the General Assembly and to give effect to such intention. In our opinion the manifest intention expressed in the proviso, that residence may be waived in the case of positions requiring technical knowledge, training and experience, is to except applicants for such positions from all limitations involving residence. There is no other conceivable purpose of the proviso than to secure to the State, as a matter of public policy, the benefit of the 'best and most efficient service, and to that end to permit the civil service commission to waive residence of the applicant. A resort to artificial rules of construction is permissible where the legislative intent cannot be otherwise ascertained, which, in our opinion, is not the case in this instance. There is, however, no such aid to construction which would lead to a different result. The office of a proviso is to limit, restrain or qualify the enacting clause or to except something from its operation, and this proviso excepts from the enacting clause all requirements as to residence. The enacting clause provides that an examination shall be public, competitive and free to all citizens of the State of Illinois who may be lawfully appointed to any office or place in the service of the State of Illinois. The fourteenth amendment to the Federal constitution provides that all persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. Therefore a citizen of this State is a citizen of the United States residing within this State, and as the. State does not create or define citizenship, a waiver of resi-

dence within the State is the waiver of an essential element of such citizenship. The further provision of the enactment is that the examination shall be free to those who may be lawfully appointed to any office or place in the service of the State, with limitations specified in the rules of the commission as to residence and other specified matters. The examinations are not to be limited to persons who may be lawfully appointed to office, but are to be free to any person who may be lawfully appointed to a place in the service of the State. Obviously, it was not intended that every civil service employee must be qualified and eligible for all the various positions requiring special qualifications, such as doctors, barbers, dentists, coal miners, coal operators, and the like. Rules as to such qualifications, as well as to residence, are to be made by the commission, and the freedom of citizens of the State to apply for and secure positions in the public service was designed not so much to limit such opportunities to citizens of the State as to secure equal opportunities and privileges between citizens. Clearly, the proviso related only to a waiver by the commission of a limitation imposed by the General Assembly itself, and if residence within the State shall be waived citizenship would also be waived, because it could not exist without residence within the State. It is not possible to construe the proviso as authorizing a waiver by the commission of some rule, which the commission may or may not prescribe, requiring residence within a particular district or part of the State. This is necessarily so, because the commission, in case it should make any such rule, could either waive or change it at any time so as to apply uniformly to certain positions without express authority, and the simple, direct and natural method of waiving any requirement as to residence would be not to make any rule about it. The only provision of the enacting clause having any relation to residence is the one making examinations free to citizens of the State, and if the commission

waives residence within the State it necessarily and inevitably waives any possible requirement that the applicant shall be a citizen of the State. If the history of legislation concerning civil service throws any light on the question under consideration, it shows an intention of the General Assembly to change an existing rule by permitting the State to have the benefit of expert service without regard to residence of the applicant at the time of his examination.

The proviso either means that the commission may waive residence within the State or is without any meaning, excepts nothing from the enacting clause but leaves it as it would be without the proviso, and was added by the General Assembly without intention or purpose. It seems to us that the wrong alternative has been selected.