## ART OVERBY v. OKLAHOMA CITY.

No. A-7586. Opinion Filed Jan. 25, 1930.
(287 Pac. 796.)

See, also, 43 Okla. Cr. 400, 279 Pac. 523.

Hall & Thompson, for plaintiff in error.

M. W. McKenzie and G. B. Fulton, for defendant in error.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as the defendant, was by complaint filed in the municipal court of Oklahoma City charged with the violation of a city ordinance by maintaining a nuisance by operating a mechanical device known as a slot machine. The defendant was convicted, and appealed from the municipal court to the county court of Oklahoma county, tried

and convicted, and his punishment fixed at a fine of $19 and cost. Motion for new trial was filed, considered, overruled, and exceptions saved, and the defendant has appealed to this court.

The ordinance upon which the complaint is found is No. 3608. The portion under which said charge is laid reads as follows:

"It shall be unlawful and an offense for any person, firm or corporation to operate or be in control of the operation of any mechanical device, contrivance or instrumentality, ordinarily known as a 'slot machine', or wherein or whereby, upon a deposit therein of a coin, slug, or token, there is received in exchange, depending upon chance, any money, or any card, paper, check, token, slug or other evidence of winning is, or may be exchanged or redeemed for anything of value or may be deposited in such device and exchanged thereby for merchandise, money or cards, papers, checks, tokens, slugs or other additional evidence of winning, or which slot machine shall vend any merchandise in varying quantities, such quantities in anyway depending upon chance. Such slot machine is hereby declared to be a public nuisance as being a gambling device and unlawful and against the welfare of the city of Oklahoma City, and may be abated as hereinafter provided."

The charging part of the complaint is as follows:

"John Von Elm, of lawful age, being duly sworn, on oath, deposes and says that on the 3rd day of June, 1929, in the city of Oklahoma City, in Oklahoma county and state of Oklahoma, one Art Overby did then and there unlawfully and contrary to the ordinance of the city commit the offense of operating a public nuisance, that is to say, the said Art Overby did have under his control the operation of a mechanical device, ordinarily known as a 'slot machine,' to wit: A Mills O. K. Mint Vending Machine, wherein upon a deposit therein of a coin, there is received in exchange, depending upon chance, checks,

44

or other evidence of winnings, which may be exchanged for anything of value, or which may be deposited in such device and exchanged thereby for merchandise, to wit: Mints. The said offense was committed at No. 1 West California avenue and is contrary to Oklahoma City ordinance No. 3608."

The case was tried to the court, a jury having been expressly waived, upon the following statement of facts:

"Come now the city of Oklahoma City, by Malcolm McKenzie, city counselor, and Art Overby, by Hall & Thompson, his attorneys, and hereby agree upon the following statement of facts in the above styled and numbered cause:

"That the defendant Art Overby was charged in the city court of Oklahoma City with violating a city ordinance of the city of Oklahoma City, Oklahoma, by operation of a mechanical device, contrivance or instrumentality ordinarily known as a 'slot machine,' in which complaint it was charged that said Art Overby then and there unlawfully and contrary to the ordinance, did commit the offense of operating a public nuisance, that is to say, the said Art Overby did have under his control the operation of a mechanical device, ordinarily known as a 'slot machine,' to wit: A Mills O. K. Mint Vending Machine, wherein upon a deposit therein of a coin, there is received in exchange, depending upon chance, checks or other evidence of winnings, which may be exchanged for anything of value or which may be deposited in such device and exchanged thereby for merchandise, to wit: Mints.

"That he was tried in the city court and convicted and fined the sum of nineteen dollars and costs, from which conviction and sentence the said Art Overby appealed to the county court of Oklahoma county, Oklahoma.

"That said machine was the property of the Superior Confection Company of Columbus, Ohio, and leased or rented to the said Art Overby under written contract, in

which contract it was provided that: 'The party of the second part further agrees that he will not redeem any tokens from the Superior automatic salesman for either cash or merchandise and he will not buy or suffer anyone else to buy or obtain any of these tokens in any manner whatsoever in trade. In event he does, this contract does hereby become null and void, and this party of the first part has the right to enter the premises and remove the machine therefrom.'

"That the said Art Overby, at his place of business, was operating said machine in conformity to his contract, and that the metal tokens were not redeemed by him in any manner. That the machine so operated by the said Art Overby is described as follows:

"That said machine, by design and operation, is intended to be a merchandise vending machine with an amusement feature, designed for the purpose of attracting the attention of customers to the machine and, by amusing them to stimulate the sale of mints. Said machine consists of a rectangular metal box of a convenient size and suitably ornamented. In the front part thereof there are several vertical racks for holding the packages of mints to be vended. The mints are put up in cylindrical packages and are placed in said racks horizontally and immediately behind the glass windows with which the front of said machine is provided, so that the customer can see the kind and character of packages offered for sale. Said machine is provided with a slot so constructed as to exactly fit and accommodate a nickel (five-cent piece), and with machine so designed and constructed that said machine will deliver to the customer or operator a package of mints only upon the deposit of a nickel in said slot, and each time a nickel is so deposited. In the upper part of said metal box, behind a glass window in the front thereof, is placed an advertising or amusement feature designed to attract attention to said vending machine and to amuse the customers thereof and to thereby stimulate the sale, by said machine, of the mints contained in said machine. Said amusement feature consists of three metal

discs or reels, upon the outer surface of which are pasted, at intervals, bits of paper, variously and brightly colored and cut in various fantastic shapes, so that when said reels are spun, in the manner herein below described, they cause a flash or flare of rapidly moving and contrasting colors, intended to attract the attention of the passing public to said vending machines. To further attract and to amuse the customers of said vending machine and others whose attention has been attracted thereto, each of the bits of paper on the outer surface of said reels has printed upon it words depicting, in an amusing manner, the character, talents or fortune of the observer. The design, use and operation of said reels are purely an advertising feature, intended to be operated solely to attract attention to said machine and to amuse its customers and others attracted thereby and to stimulate trade, namely, the purchase of mint candy from said vending machine.

"That said machines are operated as follows: The patron deposits a nickel in the slot provided therefor on the machine, pulls a lever attached to the side of the machine and then turns a knob below, which operations release into an open slot or tray at the bottom of the machine one standard five-cent package of mints (which are candied confections). At the same time, by the same operation, the three reels on the front of said machine are caused to spin, creating a flash of color, which are designed to attract attention of others to said machine. Said reels quickly come to rest, displaying to the observer the amusing sentences depicting his or her character, talents, prospects of marriage or other prognostications concerning his or her future.

"At intervals, when the machine is thus operated, it causes to drop into a receptacle at the bottom of the machine metal slugs, or tokens, varying in number from two to twenty, which are colored to resemble brass, but which, in fact, are intended to have no monetary, merchandise or exchange value, and are not redeemable in money, merchandise or other thing of value, according to the terms of the contract hereinabove set forth, but may be used

solely for the purpose of amusement by the purchaser of said package of mints, so far as the machine is concerned, in the following manner, namely: They may be dropped into the slot on said machine, and then, when the lever on said machine is pulled, the three reels on the front of said machine are caused to spin and to exhibit to the observer each time, new or additional 'fortune' depictions of character, and other amusing sentences printed on the numerous bits of paper pasted on the outer surface of said reels.

"Said vending machine is so constructed that, in no instance, when it is being operated by said metal slugs or checks, does the operator receive, nor will the machine deliver, any mints, merchandise, money or anything other than the operations of the fortune telling device, and, at intervals, metal slugs or checks of the same kind and character. The only operation of said machine that can be obtained or caused by the use of said metal slugs or checks is the spinning of the reels above referred to and at intervals, the delivery of said machine into said open tray of other additional slugs or checks of identically the same kind, for the same identical use. The purpose of this being to stimulate the operator to continue the reels to spin, thereby making flashing of moving color that are intended to attract attention of the passing public to said machine, and to amuse the operator and other observers thus attracted, as above set forth.

"Said metal slugs or checks, when delivered by said vending machine, are intended to have no money or property value and are intended to be of use only for the purpose of operating the amusement feature of said machine, as above set forth. Said metal checks have, stamped on one side thereof, the words, 'No cash or trade value whatsoever,' and, in similar lettering, on the other side thereof, the words 'Loaned for amusement only.'

"On the top of said vending machine, in an ornamental frame, said machine displays a sign, printed in large black type, the following information, namely:

" 'The tokens received from this vender are of no value. Tokens may be used to replay this vender for the customers' sole amusement.'

"In another metal frame, immediately below the three amusement reels and set at such an angle as to naturally meet the eyes of the customer when and before operating said machine, is displayed in large, plain type the same words above quoted, and, in addition thereto, the following words, to-wit:

" 'A package of confectionery vends with each five cents. Confectionery not vended with amusement tokens.'

"In every instance, when the machine is operated with a nickel (which is the only coin that operates it), when it delivers mints, the purchaser or operator thereby receives a standard five-cent package of mints, which package has a universal, fixed commercial value of five cents. In no instance does the operator fail to receive for his five-cent piece full compensation in mints.

"Either party reserves the right to offer and introduce any additional evidence upon any other fact or facts not set out herein.

"That Art Overby filed petition for writ of habeas corpus in the Criminal Court of Appeals, and is the same person as defendant in this case."

The defendant has assigned eight errors alleged to have been committed by the trial court. In the view we take of this record, they may be considered together, as they all relate to the question of the sufficiency of the evidence to sustain a conviction. The only question to be determined by this court is the question as to whether or not the proof in this case is sufficient to sustain a conviction of the violation of the city ordinance under which the defendant in this case is charged. There is no controversy between the city and the defendant as to the facts in this case. It will be seen that the defendant is charged

with the violation of a city ordinance which defines what it takes to constitute gambling, in the following language:

"The operation of any mechanical device, contraption, or instrumentality ordinarily known as a 'slot machine' or wherein or whereby, upon a deposit therein of a coin, slug or token, there is received in exchange, depending upon chance, any money, or any card, paper, check, token, slug or other evidence of winning is, or may be exchanged or redeemed for anything of value or may be deposited in such device and exchanged thereby for merchandise, money or cards, papers, checks, tokens, slugs or other additional evidence of winning, or which slot machine shall vend any merchandise in varying quantities, such quantities in any way depending upon chance. Such slot machine is hereby declared to be a public nuisance as being a gambling device."

The defendant contends that the slot machine operated by him in the manner in which it is constructed, and in the manner in which he operated the same, is not a gambling device. This defendant was before this court, In re Application for Writ of Habeas Corpus of Art Overby, 43 Okla. Cr. 400, 279 Pac. 523, 524, in which case this court said:

"A slot machine is not per se a gambling device. 12 R. C. L. 729; 27 C. J. 968; Nelson v. State, 37 Okla. Cr. 90, 256 Pac. 939. It is only when a slot machine comes within a definition of a gambling device, as where it delivers some commodity in a varying quantity, or where the player may receive, depending on chance, something of value or a token of some kind redeemable for something of value, or where there is some other element which appeals to the gambling instinct, that it is a gambling device. 27 C. J. 989; 2 Bouvier, Law Dict. (Rawle) Gambling, p. 1330; 4 Words and Phrases, First Series, p. 3029; State v. Johnson, 15 Okla. Cr. 460, 177 Pac. 926; Nelson v. State, supra. Where the commodity vended by a machine is unvarying, where no check or token of any value or redeem-

able or playable for anything of value in addition to the commodity vended is received, it is not a gambling device."

It is contended by the representative of the city that the machine as operated by the defendant was a violation of the city ordinance, and in support of his contention cites the case of State v. Apodaca, 32 N. M. 80, 251 Pac. 389. An examination of this case shows the stipulation of facts is as follows:

"Every time you put a nickel in the slot machine the indicator shows exactly what you get with the nickel, in the way of chips as well as gum. Each time * * * the indicator will show the number of additional chips you get with the particular nickel you put in, and if you deposit chips in the machine you may get additional chips if the indicator so shows, but do not get gum; the indicator at all times showing what you get whether playing a chip or money, each chip having a purchasing power of five cents at the place only where the slot machine is operated."

And in the body of the opinion we find that the proprietor not only risks the loss of checks of value in trade, but that the said checks were redeemable at the place where the said machine was being operated. We do not think the facts in the Case of Apodaca, supra, are applicable to the facts in this case.

The attorney for the city cites the case of State v. Woodman, 26 Mont. 348, 67 Pac. 1118, in which case, in the second paragraph of the syllabus, it was held:

"That a nickel in a slot machine, involving in its operation the element of chance as to whether the player obtained in cigars more or less than the value of his money, was prohibited thereby."

This Montana case is not applicable to the facts in this case, as there is no testimony tending to show that,

when the customer placed his nickel in the slot machine in question, he expected to receive anything further than a package of mints of the value of five cents.

This court in the case of State v. Johnson, 15 Okla. Cr. 460, 177 Pac. 926, stated what kind of a machine is a gambling device. The facts in the Johnson Case not being the same as the facts in this case, it is the contention of the defendant that the machine he was charged with operating in no instance or under no circumstances is played as a game of chance; that, when a player of the machine deposits a nickel in the slot, he receives for his five cents a package of mints of the retail price of five cents; that sometimes, in addition to the mints, he receives metal slugs of no value, which may be played back into the machine for the amusement of the customer, but which checks or slugs are not redeemable for anything whatsoever, and in playing them back in the machine no merchandise is ever delivered by the machine—in such case the reel revolves, and the pointer comes to rest at some sentence pasted thereon purporting to depict character, or to tell the fortune of one. Under the stipulation of facts, this is all the machine does, and all plaintiff in error ever did with it, and, under the facts in this case, the machine he was operating was not a gambling device and operated in violation of the city ordinance.

In Nelson v. State, 37 Okla. Cr. 90, 256 Pac. 939, 940, this court defined the kind of a machine that is not a gambling device, in the following language:

"It is evident that a mere vending machine, by which merchandise is dispensed in a uniform quantity to each purchaser, although the price may be deposited in a slot in such machine, is not what is meant. The use of a vending machine is not unlawful. Such a machine cannot be played for money, property, checks, credits, or any

representative of value as the terms are used in this statute."

The court, in the case of Ex parte Fuller, 31 Okla. Cr. 289, 238 Pac. 512, 513, in the body of the opinion, held:

"The vending of mints, chewing gum, and candy by a coin machine is no more detrimental to the good order of society than is the vending of such merchandise by a salesman. It may be that such machines compete unfairly with established merchants or fail to bear their just share of public burdens by way of taxation. But to cure such a fault, if it exists, is not an exercise of the police power, nor is there any regulation provided by the act in question."

It is contended by the defendant that the machine he was operating was a machine in character the same as the machine involved in the case of Ex parte Fuller, supra. In this case the court held that it was not a violation of the law and was not a gambling device.

The defendant, in support of his contention that the machine is not a gambling device, cites an opinion of the Attorney General of the state of Ohio, vol. 10, p. 2546, in which opinion the question was as to whether or not a machine of the same kind and make as the machine the defendant in this case was operating was a gambling device, in which the Attorney General held that the machine was not a gambling device, and, among other cases, cited with approval the case of Nelson v. State, supra.

The ordinance which the defendant is alleged to have violated requires that a slot machine must be a gambling device before it can be declared a public nuisance. We hold that a mere vending machine by which merchandise is dispensed in a uniform quantity to each purchaser, although the price may be deposited in a slot in such machine, is not what is meant; the use of a vending ma-

chine is not unlawful where such machine cannot be played for money, property, check, credits, or any representative of value as the terms are used in the ordinance.

It is well settled that this court will not disturb the judgment on account of the evidence when there is any competent evidence to support it. It is equally well settled that it is not only the province but the duty of the court to set aside such a judgment when it is contrary to the evidence, or where there is no evidence to support it. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled when put upon trial for an offense.

After a careful examination of the testimony contained in the record, we hold that the testimony is insufficient to sustain the judgment. The demurrer of the defendant to the evidence was well taken, and should have been sustained. For the reasons herein stated, the case is reversed and remanded, with directions to dismiss and discharge the defendant.

EDWARDS, P. J., concurs.

CHAPPELL, J., dissents.