(No. 34029.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ONE MECHANICAL DEVICE *et al.,* Appellants.

*Opinion filed March 20, 1957—Rehearing denied May 20, 1957.*

Davis, Schaefer, and Hershey, JJ., dissenting.

Francis J. Coyle, and Sam M. Arndt, both of Rock Island, and Crowley, Sprecher & Weeks, of Chicago, for appellants.

Bernard J. Moran, State's Attorney, of Rock Island, (George W. Crampton, of counsel,) for appellee.

Mr. Justice Daily delivered the opinion of the court:

The circuit court of Rock Island County, upon a petition filed by the State's Attorney, found that a mechanical device commonly referred to as a pinball machine was a gambling device and ordered its destruction. On appeal by the legal owners the Appellate Court for the Second District affirmed the finding and order; we, in turn, have granted a petition for leave to appeal in order to review the interpretation placed upon the controlling statute by the courts below.

The statute in question, herein called the Gambling Device Act was enacted for the stated purpose of prohibiting the use of machines or devices for gambling purposes. (Ill. Rev. Stat. 1953, chap. 38, pars, 341-343.) In section 2 of the act a gambling device is defined as follows: "Every clock, tape machine, slot machine or other machine or device

for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found. A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no coins, tokens or merchandise shall not be considered to be a gambling device within the meaning of this Act and any right of replay so obtained shall not represent a valuable thing within the meaning of this Act." Of more than historical interest is the fact that the first sentence of the section was enacted in 1895 (Laws of 1895, p. 156,) before the existence of modern day pinball machines, and that the second sentence was added by the legislature in 1953, (Laws of 1953, p. 929,) on the heels of *People* v. *One Pinball Machine,* 316 Ill. App. 161, (Petition for Leave to Appeal Denied 321 Ill. App. XIII,) wherein a pinball machine was held to be a gambling device within the definition of the existing statute.

The operation and construction of the machine now at issue are fully described in the record and the game has been demonstrated before this court. In summary it may be said that the device is a typical pinball machine. Upon the insertion of a dime, the player is entitled to play five metal balls successively. The player draws back and then releases a plunger or ball-shooter which propels each ball onto a horizontal playing surface or table with 25 holes into which the ball may drop. The table also contains bumpers and springs which may deflect the course of the ball. When the ball drops into one of the holes, each of which is identified by a number, a corresponding number is recorded by means of lights on the vertical backboard

or scoreboard. The object is to score three or more numbers in a row, either vertically, horizontally, or diagonally, and the reward for succeeding is the winning of a specified number of free plays. By inserting additional dimes, the player may increase his opportunity of obtaining particular numbers or combinations of numbers and may increase the number of free plays he will win if he is successful. In any event, he is not entitled to any free plays until he has finished playing the five balls.

The game is mounted on four legs which are attached to the cabinet and permit some flexibility. According to witnesses for both the People and the owners, many players manipulate the game with their hands so as to take advantage of this flexibility within the limits prescribed by a "tilt" device, consisting of a plumb bob which terminates a particular game if the cabinet is jolted too hard. Other players rely exclusively upon the plunger in playing the game. The knob on the plunger is designed to assure the player a maximum of sensitivity. Under the plunger is a guide plate with nine scored lines in order to assist the player in gauging the intensity of his shots. The object of the game, the distribution and position of the holes, and the alternative methods of scoring cause the player to exercise some judgment in the operation of the game.

From 1895 and until the amendment in 1953, we have construed the Gambling Device Act as prohibiting machines or devices in connection with which money is staked, hazarded, bet, won or lost, such as slot machines, (*Bobel* v. *People,* 173 Ill. 19; *People* v. *One Device,* 410 Ill. 318,) and crap tables. (*Frost* v. *People,* 193 Ill. 635; *People* v. *Cattaneo,* 6 Ill.2d 122.) A pinball game, such as the defendant game in this case, would unquestionably fall within the prohibition of the statute if it returned money to the player. However, whereas a slot machine or a crap table entails no skill whatever, affords no amusement beyond that which the player enjoys when he is paid money, and

within a few seconds parts the player from his money through his expectation of winning additional money, a pinball game is essentially an amusement game which can be, and frequently is, played for long periods of time with no reward to the player beyond the enjoyment of playing. A pinball game which does not pay out money or anything else of value and therefore on which money cannot be staked, hazarded, bet, won or lost, is not a gambling device and does not fall within the prohibition of the statute. *People* v. *One Slot Machine*, 303 Ill. App. 337.

The Appellate Court held in *People* v. *One Pinball Machine* 316 Ill. App. 161, that amusement is a thing of value, that a free play or the right to additional amusement is a valuable thing and that, therefore, a pinball machine dispensing free plays is a gambling device. The court in that case relied upon cases from other jurisdictions interpreting a variety of differing statutory clauses and, although several jurisdictions have reached the conclusion that a free play is a thing of value, other jurisdictions and courts have come to the contrary result. *Washington Coin Machine Assn.* v. *Callahan*, 142 F.2d 97 (C.A., D.C.); *Chicago Patent Corporation* v. *Genco, Inc.*, 124 F.2d 725 (C.C.A. 7th); *Davies* v. *Mills Novelty Co.* 70 F.2d 424 (C.C.A. 8th); *Mills Novelty Co.* v. *Farrell*, 64 F.2d 476 (C.C.A. 2d); *State* v. *Waite*, 156 Kan. 143, 131 P.2d 708; *State* v. *One Bally Coney Island No. 21011 Gaming Table*, 174 Kan. 757, 258 P.2d 225; *State* v. *Betti*, 23 N.J. Misc. 169, 42 A.2d 640; *Overby* v. *Oklahoma City*, 46 Okla. Cr. 52, 287 Pac. 796; *In re Wigton*, 151 Pa. Super. 337, 30 A.2d 352; *Commonwealth* v. *Kling*, 140 Pa. Super. 68, 13 A.2d 104; *State* v. *One "Jack and Jill" Pinball Machine*, 224 S.W.2d 854 (Mo. App.); *Crystal Amusement Corporation* v. *Northrop*, 19 Conn. Supp. 498, 118 A.2d 467.

We are of the opinion that a free play is neither money, the equivalent of money, nor a valuable thing. It is un-

realistic to hold that the possibility of winning a greater or lesser amount of amusement is gambling because if it were, most amusement games would be barred by the statute. There is no evidence that the legislature ever intended so sweeping a prohibition. As a matter of fact, the legislative intent has recently been restated. In 1953, after the original statutory language had been interpreted by the Appellate Court in *People* v. *One Pinball Machine,* 316 Ill. App. 161, to include pinball games dispensing free plays, the General Assembly amended not only section 2, but also section 1, of the Gambling Device Act (Ill. Rev. State. 1953, chap. 38, pars. 341, 342,) to say no fewer than four times that a device rewarding the player with a free play is not a gambling device and that "any right of replay so obtained shall not represent a valuable thing." On the same day, July 7, 1953, the legislature passed a revenue measure taxing and licensing pinball games dispensing free plays. (Ill. Rev. Stat. 1953, chap. 120, pars. 481b.1-481b.12.) In the revenue statute the legislature took two additional opportunities to emphasize that the "right of replay so obtained shall not represent value or evidence of winning within the meaning of *any of the laws of this state."* (Emphasis supplied.) If there ever was any doubt about the legislative intent, it was settled unequivocally and without room for further interpretation on July 7, 1953. See Note 31, Notre Dame Lawyer 505 (May, 1956).

Since there is no evidence in the record that any money or anything else of value was ever staked, hazarded, bet, won or lost upon the action of the defendant device and since its only reward to players is free plays, it is not a gambling device under section 2 of the Gambling Device Act and the order for its destruction must be reversed.

In addition, the defendant device falls exactly within the terms set forth by the legislature in its stated intention of exempting certain amusement games from the scope of

its operation. The record clearly shows that the defendant device is: (1) a coin-in-the-slot-operated mechanical device, (2) played for amusement, (3) which rewards the player with the right to replay such mechanical device, (4) and a device so constructed or devised as to make such result of its operation to depend in part upon the skill of the player, and (5) which returns to the player thereof no coins, tokens or merchandise. There appears to be no dispute over the fact that the defendant device fulfills conditions (1), (2), (3), and (5), but the People have urged that the defendant game is not so constructed or devised as to make the result of the operation of it "depend in part upon the skill of the player." No claim is made that a pinball game is a game of pure skill such as chess, or a game in which skill predominates over chance, such as tennis, or even a game in which chance and skill play almost equal roles, such as bridge. All that the defendants assert, and all that the legislature has required, is that the operation of a pinball game depends *"in part* upon the skill of the player." (Emphasis supplied.) The evidence in this case establishes (and we have seen the game demonstrated,) that some skill is involved in its operation. The statute does not require us to measure the degree of skill, assuming that it is capable of admeasurement.

In view of the language of the statute, as amended, and the evidence in the case, we are of the opinion that the circuit court of Rock Island County was in error when it ordered the destruction of the defendant machine. Therefore its order and the judgment of the Appellate Court for the Second District affirming it are reversed.

*Order and judgment reversed.*

Mr. JUSTICE DAVIS, dissenting:

I dissent from the opinion of the majority in this case because it ignores the plain language of the statute and much of the evidence which is determinative of the issue.

Under the law prior to the amendment of the Gambling Device Act in 1953, the defendant device, without question, would have been within the proscription of the statute. (*People* v. *One Pinball Machine*, 316 Ill. App. 161; Petition for Leave to Appeal Denied, 321 Ill. App. XIII.) The 1953 amendment added to both sections 1 and 2 of the act the following words: "A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no coins, tokens or merchandise shall not be considered to be a gambling device within the meaning of this Act and any right of replay so obtained shall not represent a valuable thing within the meaning of this Act." (Ill. Rev. Stat. 1953, chap. 38, pars. 341, 342.) In order to fall within the amendatory exception, such device must be a coin-in-the-slot operated mechanical device, (1) played for amusement, (2) which rewards the player with the right to replay, (3) which is so constructed or devised as to make the result of the operation thereof depend in part upon the skill of the player, and (4) which returns to the player thereof no coins, tokens, or merchandise. Thus, as the Appellate Court stated, the "above conditions are prerequisites to its application, that is, before the amendatory exception can take the instant device out of the statute, all conjunctive conditions must be met, and if any be lacking the device does not come within the amendatory exception." *People* v. *One Mechanical Device*, 9 Ill. App. 2d. 38, 46.

In determining whether the device in question meets the terms of the exception, it is well to remember that amendatory exceptions and provisos in a statute are designed to qualify or limit what is otherwise generally affirmed in the body of the act; that they are to be strictly

construed; and that one who asserts that he comes within a statutory exception, must prove such fact. *Doubler* v. *Doubler*, 412 Ill. 597, 600; *State Public Utilities Com.* v. *Early*, 285 Ill. 469.

The statute expressly provides as one of the conditions of the exception that the device be "so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player." It is not enough that the result may be somehow affected by what the player may do to the machine; the machine must be *constructed* or *devised* to make the result of its operation *depend* in part on the skill of the player. The majority has overlooked this plain requirement.

The only acts of skill related or demonstrated by witnesses for the defendants consist of what they term "gunching" and "hulaing," which is the jargon used to describe the acts of pushing, pulling, shoving, hitting, shaking or tipping the machine, and which are supposed to have some effect on the course of the steel ball as it proceeds downward on the playing surface. The opinion of the Appellate Court carefully analyzes the testimony and it will not be repeated in detail here. Suffice it to say, so far as "gunching" and "hulaing" are concerned, these acts have little, if any, effect on the course of the ball before the tilting mechanism with which the machine is equipped becomes operative and voids the particular play. This tilting mechanism is adjusted by the owner of the machine in advance and the player has no control over it whatever.

Of overriding importance is the fact that there is no proof that the machine is constructed or devised for "gunching" or "hulaing." Even though the machine may be affected by acts of external violence, it was devised and constructed so that it could be operated by inserting a dime, pushing a button and pulling the plunger. When thus operated nothing of any consequence remains but the element of chance. It was not constructed in such a way

that the result of its operation depends on player skill in whole or in part.

This machine is an extremely complex mechanism. The first dime deposited gives the player the right to play five balls, and additional dimes, up to 500, may be played, which may or may not change the odds of the game. The player has no control over the action of the machine resulting from the deposit of additional dimes; no skill, but rather only chance, mechanically determined, is involved. This feature of the machine is similar to the slot machine; yet the only legitimate use to which it can be employed is the award of additional free games to the player. Credulous though I may be, it is beyond my power to believe that such machine will be so used and is not a gambling device. The Appellate Court in deciding this case, (9 Ill. App.2d 38,) aptly stated: "While it does not appear from the evidence in this case still it is common knowledge that the so-called free game is frequently but a subterfuge, and that the common practice is for the proprietor, when the player obtains a winning score, to pay off in money or merchandise. It is also common knowledge that the machine itself is sometimes used by players to determine who shall buy the drinks or pay for refreshments, cigars or lunch and when so used it is a gambling device within the meaning of our statute. The fact that there is no testimony in this case that the machine in controversy was being so operated, is not the test of whether it is a gambling device."

In *People* v. *One Device*, 410 Ill. 318, an appeal was brought to this court requiring determination of whether the machine under consideration was a gambling device under the then existing statute. At page 322 this court stated: "The only debatable question in this case is whether this machine is such a gambling device, and that is a question of fact which raises no question of constitutional construction."

In the case at bar, the Appellate Court made a factual determination from the evidence that the machine in question was a gambling device and this court is barred under the provisions of the Civil Practice Act (Ill. Rev. Stat. 1955, chap. 110, par. 92(3)(b) from re-examining and redetermining such fact. This it has done in its opinion. I believe this machine is a gambling device under the provisions of the statute, and that the judgment of the Appellate Court should be affirmed.

SCHAEFER and HERSHEY, JJ., concur in the foregoing dissenting opinion.