Vernon J. White, et al., Plaintiffs-Appellees, v. Richard B. Ogilvie, Sheriff of Cook County, Illinois, and Individually, Defendant-Appellant.

### Gen. No. 49,404.

First District, Third Division.
August 27, 1964.
Rehearing denied September 11, 1964.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Edward J. Hladis, Chief of Civil Division, Ronald Butler and Joseph V. Roddy, Assistant State's Attorneys, of counsel), for appellant.

James A. Brown, of Chicago, for appellees.

Harold A. Smith, of Chicago (Austin L. Wyman, of Chicago, of counsel), Amicus Curiae.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from an order of the superior court of Cook County permanently enjoining the defendant, Richard B. Ogilvie, Sheriff of Cook County, his deputies, agents and subordinates from seizing, taking, holding, confiscating or destroying any coin-in-the-

slot mechanical devices commonly known as pinball machines, especially those belonging to the plaintiffs, and also from interfering with the plaintiffs' operation or use of such devices in the absence of evidence to prove that such operation or use is contrary to, or in violation of, Ill Rev Stats 1963, c 38, § 28–2. The order further recited that the defendant was to return to the plaintiffs the machines which had been seized by him, together with the money which was located in each and every machine, in a locked box, inside the front of the machine.

It is the defendant's contention that certain features found in the machines at issue combined with the possibility of winning as many as six hundred free games on one play of the machines stamp the machines as per se gambling devices within the proscription of the above statute.

Prior to 1963, the above statute read as follows:

> Sec 28–2. (a) A "gambling device" is any clock, tape machine, slot machine or other machines or device for the reception of money or other thing of value on chance or skill or upon the action of which money or other thing of value is staked, hazarded, bet, won or lost; or any mechanism, furniture, fixture, equipment or other device designed primarily for use in a gambling place. A "gambling device" does not include:

> (1) A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no coins, tokens, or merchandise. (Ill Rev Stats, 1961, c 38, § 28–2.)

In 1963, section 28–2 was amended by substituting the words ". . . no money, property or right to receive money or property," for ". . . no coins, tokens, or merchandise." Defendant contends that this change in the exception to the statutory definition of a "gambling device" removed the machines at issue from the protection of the exception because they are constructed in such a manner that they return to the player the "right to receive money or property."

Defendant further contends that while the machines at issue outwardly manifest "pseudo-amusement" qualities, certain features of the machines conclusively point to their use as gambling devices. These features as disclosed by the evidence are:

A.  Multiple Coin Inserter—This is a device on the front of the machines into which a player inserts his dime in order to commence the game. Additional dimes may be inserted before the first ball is played. The purpose of inserting additional dimes is to increase the number of games to be won when a winning combination is hit and/or to gain various features which increase the chance of winning. Additional dimes may also be inserted after the last ball has been played in order to get additional balls. Each time an additional dime is inserted, a chance selector is activated which either may or may not give the desired results. The operation of the chance selector is in turn affected by the "reflex or memory unit" and the "manual adjustment plugs."

B.  Reflex or Memory Unit and Manual Adjustment Plugs—The "reflex unit" provides a memory of the past history of the machine. It is composed of a complicated arrangement of gears, coils and relays usually placed in-

side the back door of the machines, which automatically increase or reduce the chances of getting the desired results from inserting additional dimes in the "Multiple Coin Inserter." As games are won, the "reflex unit" tightens up by cutting down on the number of parallel circuits supplying voltage through the chance selector. As games are played without replays being won, the number of parallel circuits are increased. The "manual adjustment plugs" control the degree of game difficulty by controlling in a semi-permanent way the number of parallel circuits supplying voltage through the "reflex unit."

C. Knock-off-button or Toggle Switch—These mechanisms are located on the underside of the machine. Pushing the button or throwing the switch has the same effect as disconnecting and reconnecting the line cord. The free games shown on the visible indicator are released while the games so released are recorded on a meter inside the machine.

D. Counter System—There are two meters or counters inside the machines located in the front near the coin boxes. One, called the total play counter, keeps a tally of the number of coins inserted. The second counter or meter tallies all of the unused or released free even games which were removed by use of the knock-off-button or toggle switch from the externally visible free replay indicator on the front of the machine.

Testimony was elicited from plaintiffs' witnesses showing that the machines were used only for amusement purposes. This testimony stands uncontradicted. No evidence was presented by the defendant to the effect that such machines were ever used for gambling

purposes or that anything was ever staked, hazarded, bet, won or lost on their operation.

People v. One Mechanical Device, 11 Ill2d 151, 142 NE2d 98, was decided before the 1963 amendment to Ill Rev Stats, c 38, § 28–2. In that case, our Supreme Court reversed a decision of the appellate court which had affirmed a decision of the circuit court of Rock Island County declaring that the pinball machine before that court was a gambling device per se and ordering its destruction. The machine was of the same general type and was manufactured by the same manufacturer as the machines now involved in this case. It is not clear from the opinion of the Supreme Court whether or not evidence was presented in the trial court relating to a "reflex unit," "manual adjustment plugs," "knock-off-button" or "toggle switch," or "counter system" on the machine there at issue.

The Supreme Court on page 153 stated, "The operation and construction of the machine now at issue are fully described in the record and the game has been demonstrated before this court. In summary it may be said that the device is a typical pinball machine." The court then described the operation of the machine including the "multiple coin inserter" feature.

At page 156 the court said:

> "Since there is no evidence in the record that any money or anything else of value was ever staked, hazarded, bet, won or lost upon the action of the defendant device and since its only reward to players is free plays, it is not a gambling device under section 2 of the Gambling Device Act and the order for its destruction must be reversed.

> "In addition, the defendant device falls exactly within the terms set forth by the legislature in its stated intention of exempting certain amusement games from the scope of its operation. The record clearly shows that the defendant device is: (1)

a coin-in-the-slot-operated mechanical device, (2) played for amusement, (3) which rewards the player with the right to replay such mechanical device, (4) and a device so constructed or devised as to make such result of its operation to depend in part upon the skill of the player, and (5) which returns to the player thereof no coins, tokens or merchandise."

Shoot v. Illinois Liquor Control Commission, 30 Ill2d 570, 198 NE2d 497, was decided by our Supreme Court subsequent to the 1963 amendment, and the court in that case, quoting from the statute in its present form, reaffirmed its holding in People v. One Mechanical Device, 11 Ill2d 151, 142 NE2d 98, that a pinball machine is not a gambling device under the law of Illinois.

The Shoot case arose out of the suspension of plaintiff's liquor license by the commission because of a violation of the commission's rule 20 which provides in pertinent part, "No licensee of the Commission shall purchase or possess . . . the $250 Annual Occupational Gaming Device stamp . . . for the premises licensed by the Commission. Violation of this rule shall be grounds for revocation or suspension of any license issued by the Commission. . . ." Plaintiff prosecuted an action for administrative review to the superior court of Cook County where the commission's order was reversed and rule 20 was found to be arbitrary, unreasonable and unjust. The appellate court reversed the superior court and upheld the commission's order. The Supreme Court reversed the appellate court and affirmed the order of the superior court. In its decision the Illinois Supreme Court discussed United States v. Korpan, 354 US 271. In that case the U. S. Supreme Court held that the defendant was guilty of a willful failure to purchase a $250 device stamp under the facts which showed that those who played

the pinball machine there at issue had the option of converting free games into cash. Our Supreme Court on page 572 (Shoot v. Illinois Liquor Control Commission, 30 Ill2d 570, 198 NE2d 497) said that the inferior Federal courts have construed Korpan as holding that,

". . . pinball machines are gambling devices per se and require the $250 stamp, regardless of whether 'cash, premiums, merchandise, or tokens' are actually received, where the features, characteristics and functions of the machines themselves involve the element of chance and are such that the machines may deliver or entitle the players to receive cash, etc. (Szybski v. United States, (ED Wis 1963,) 220 F Supp 806; Harvey v. United States, (D Ore 1962,) 214 F Supp 80; United States v. Nine Gambling Devices, (SD Ill 1957,) 59–2 US Tax Cases par 15257, see also: Singleton v. Mathis, (8th Cir) 284 F2d 616; United States v. Five Gambling Devices, (7th Cir) 252 F2d 210.) In brief it is not the actual use to dispense cash or premiums which controls, but the adaptability of the pinball machine for such purpose. By way of contrast, it is the view in this jurisdiction that a pinball machine is not a gaming device per se since its use may be solely for entertainment purposes. (People v. One Mechanical Device, 11 Ill2d 151.) Indeed, our legislature has expressly provided in the Criminal Code that a gambling device does not include: 'A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part on the skill of the player and which returns to the player thereof no money, property or right to receive

money or property.' (Ill Rev Stat, 1963, c 38, par 28-2(1).) In the view we take it is irrelevant whether such a machine is or is not a gaming device per se."

The court said further that it was unreasonable to set up a presumption of gambling from the purchase of a $250 device stamp, because whether there was gambling going on or not, a person owning a pinball machine was coerced into the purchase of a stamp because of the effect of the Federal court decisions.

We have no doubt that machines of this type can be used for gambling purposes, and considering the construction of the machine it becomes obvious that the manufacturers had this in mind, as well as a use for amusement solely. However, due to the persuasive language of our Supreme Court in the Shoot case we feel constrained to hold that the machines here at issue fall within the exception to the statutory definition of a gambling device. As long as the use of the machines may be solely for amusement purposes, and the machines meet the other criteria of the exception, the fact that they are also specially adaptable to use as gambling devices is irrelevant in the absence of any evidence proving such use. No such evidence is here present.

Defendant also contends that the machines at issue do not fall within the statutory exception because they give free games and are not "so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player. . . ." This argument has been fully answered by our Supreme Court in People v. One Mechanical Device, 11 Ill2d 151, 142 NE2d 98. In that case the court found that the operation of the machine before the court depended in part upon the skill of the player. The player could manipulate the machine by "gunching" and "hulaing" (a process of guiding the balls by nudg-

188

ing, pulling and slapping the machine). The speed with which the ball was propelled onto the playing surface could be controlled by pulling the plunger back various distances, and a guide plate under the plunger was calibrated so that the player could measure how far back the plunger was being pulled. Also, a player had to use a certain amount of judgment in choosing alternate methods of scoring. Our Supreme Court said that these elements established the necessary quantum of skill. As shown by the evidence, all of these elements are present in the play of the machines here at issue. Defendant in his brief says that since "gunching" and "hulaing" can be completely eliminated by adjusting the tilt mechanism, the machine is not designed so that skill plays a part in its operation. The machine at issue in People v. One Mechanical Device, 11 Ill2d 151, 142 NE2d 98, was subject to the same tilt adjustment as is evidenced by the following language in the appellate court decision in the same case (9 Ill App2d 38, 50) where it was said:

"But whatever so called 'skill' may be present in these picturesque acts—and at best it is very small —is nullified by the tilting mechanism. It is hard to see how gunching or hulaing the device can have any appreciable or discernible effect on the course of the ball before the tilting mechanism voids that particular play. And there is apparently no way of knowing how much, if any, 'gunching' a particular machine will take before the tilting feature is activated,—it evidently depends somewhat on where the machine is located and the adjustment of the tilting mechanism. A machine apparently may take no, little, a medium amount, or much gunching before the tilt operates. . . ."

Despite the operation of the tilt mechanism, our Supreme Court found that "gunching" and "hulaing"

189

are elements of skill involved in the play of pinball machines.

Defendant argues that if we were to hold that these machines fall within the exception to the statutory definition of a "gambling device" we would be ignoring the obvious intent of the legislature in amending the statute in 1963. The defendant analogizes the language used in the 1963 amendment to the language found in the Federal Gambling Devices Act, 15 USCA Sec 1171 et seq. The language referred to is that portion of the Federal Gambling Devices Act which provides that a "gambling device" means a machine "by the operation of which a person may become entitled to receive as the result of the application of an element of chance, any money or property. . . ." (15 USCA sec 1171(a)(2)(B).) The federal courts have held that, under this statutory definition, a pinball machine equipped with a knock-off-button for releasing free plays, a meter for registering the plays released, and a provision in the machine for multiple coin insertion must be considered a gambling device, there being no need to show proof of actual gambling. The language of the 1963 amendment to Ill Rev Stats c 38, § 28–2, which defendant claims carries the same import is, "which returns to the player thereof no money, property or right to receive money or property." Defendant explains the difference in wording between the federal statute and the above language of the 1963 amendment to the Illinois act by stating that the federal statute commands an affirmative measure and the Illinois act is posed in the negative. The difference between the two is more deep seated than that. The federal act says, "may become entitled to receive." Under this language it is easy to see how the courts could hold that actual proof of gambling was not necessary where the device was so designed to allow its use for gambling purposes. If the device might be used for gambling then the player "may be-

190

come entitled to receive . . . money or property." The Illinois act requires that a machine meeting all of the other requirements of the exception to the statutory definition of a "gambling device" be one "which returns to the player thereof no money or property or right to receive money or property." In order to remove it from the exception, the device must actually "return" money or property or the right thereto. It is not sufficient that the machine *may* be used to return the right to money or property. Assuming, arguendo, that a gambling debt was collectible in this state, a person playing one of these machines could not bring an action to collect anything for replays he might have won. The machine itself gives the player the "right" to receive only replays. If the legislature wished to achieve the same results that the courts have held result from the language of the Federal Gambling Devices Act, they would have couched the 1963 amendment in language of similar import.

Since the pinball machines before this court are shown by the evidence to be (1) coin-in-the-slot operated mechanical devices; (2) played for amusement; (3) which reward the player with the right to replay such mechanical devices; (4) and are so constructed and devised as to make such result of their operation to depend in part upon the skill of the player; (5) and return to the players thereof no money or property or right to receive money or property, they fall within the precise language of the exception to the definition of gambling devices found in Ill Rev Stats 1963, c 38, § 28–2. For the above reason, the order of the superior court of Cook County is affirmed.

Order affirmed.

SCHWARTZ, P. J. and DEMPSEY, J., concur.