Homer Hankenson, and Avis Youngberg, Appellants, v. Board of Education of Waukegan Township High School District No. 119, Lake County, Illinois, Appellee.

**Gen. No. 10,877.**

Second District.

April 3, 1956.

Rehearing denied May 28, 1956.

Released for publication May 29, 1956.

Rugen, Ligtenberg & Gobel, of Chicago, for appellants; John Ligtenberg, of Chicago, of counsel.

Diver, Diver and Ridge, of Waukegan, for appellees.

JUSTICE CROW delivered the opinion of the court.
This is a complaint for judicial review, under the Administrative Review Act (Ch. 110, Ill. Rev. Stats., 1953, par. 264 ff) of the final administrative decision of March 15, 1954, of the defendant administrative agency, Board of Education of Waukegan Township High School District No. 119, Lake County, Illinois, removing or dismissing the plaintiffs, Homer Hankenson and Avis Youngberg, as teachers, presumably for the ensuing school year 1954–1955, although the resolution of the defendant Board effecting the removals or dismissals does not specifically state whether the removals or dismissals are effective instanter March 15, 1954 or as of and for the ensuing school year. The plaintiffs contend that they have acquired contractual continued service status as tenure teachers under the Teacher Tenure Law, a part of The School Code (Ch. 122, Ill. Rev. Stats., 1953, pars. 24—2 to 24—8), and that the defendant's attempted removals or dismissals are contrary to the provisions of that law and violate their rights thereunder. The defendant contends that the removals or dismissals are in accordance with the provisions of Section 24-3 of that law (Ch. 122, Ill. Rev. Stats., 1953, par. 24—3) and are entirely proper thereunder. That law, Section 24-8, provides that the provisions of the Administrative Review Act shall apply to proceedings for the judicial review of final administrative decisions of the School Board under Section 24-3 thereof (Ch. 122, Ill. Rev. Stats., 1953, par. 24—8).

The pleadings consist of the plaintiffs' verified complaint, the defendant's motion (pursuant to the Administrative Review Act) for specification of errors and to strike, the plaintiffs' specification of errors, the defendant's verified answer, to which is attached

what the defendant says is the entire record or a certified copy of the record of the proceedings of the defendant administrative agency relating to the removals or dismissals which are under review, and in which answer the defendant says certain parts of the complaint contain the full and complete minutes of its meetings in any way dealing with "the decision of the defendant to decrease the number of teachers employed by" it, and the defendant's motion to strike paragraph 12 and a part of paragraph 15 of the complaint. On February 7, 1955, upon the defendant's motion, paragraph 12 and the indicated part of paragraph 15 were stricken as being immaterial and surplusage, and on the same date a judgment order was entered finding, so far as material, that the defendant had complied with Section 24–3 of the foregoing statute, that that section governed the defendant's actions, and that the Board of Education's order dismissing the plaintiffs should be affirmed, and the court accordingly entered judgment for the defendant and affirmed its decision. The plaintiffs have appealed from that judgment order and from the order of the same date striking the foregoing portions of the complaint.

No evidence was heard by the defendant administrative agency, but from the pleadings and record it appears that the essential facts, for the purposes of the case, are, in substance, these: the plaintiffs are regularly employed teachers in and for the high school district here concerned at Waukegan Township High School. One of them has been so employed since the first day of the school term in September, 1948, and ever since then; the other has been so employed since the first day of the school term in September, 1951, and ever since then. Prior to the events herein complained of they had entered upon contractual continued service under the provisions of Article 24 of the School Code (the Teacher Tenure Law), and had theretofore served as probationary teachers in the district for two

83

consecutive years. They are duly certificated, qualified to teach certain subjects, and did teach certain subjects. The defendant Board is a body politic and corporate under The School Code, derives its powers thereunder, and maintains and operates the high school here concerned. The plaintiffs have always held contracts to teach with the defendant, and held such contracts under The School Code, including the Teacher Tenure Law, for the school year 1953–4. They are citizens, over 21, and under 65 years. On March 15, 1954, the defendant Board adopted a resolution removing, dismissing, or discharging the plaintiffs,—which resolution we shall hereinafter refer to in more detail,—and that is the administrative decision presently under judicial review. On March 17, 1954, the plaintiffs received letters from the school principal, dated March 16th, informing them of the dismissals, to which letters we shall also later refer. The defendant Board purported to act under Section 24–3 of The School Code. The enrollment of the high school will be diminished by about 581 students for the school year 1954–5. On March 25, 1954, the plaintiffs made written requests to the defendant for hearings, which were not granted, and no hearings were held to which the plaintiffs were parties or of which they had notice.

The resolution of March 15, 1954 of the defendant Board, adopted at a regular meeting at which all the members were present, removing, dismissing, or discharging the plaintiffs (and certain other teachers) was as follows:

## "EDUCATION COMMITTEE REGARDING DISMISSAL OF FACULTY MEMBERS

Upon the recommendation of the Education Committee, it was moved by Mrs. Hathorne, seconded by Mrs. Smith, that the following teachers be informed by registered mail and given statement of honorable dis-

84

charge and the reason therefor, namely, the separation of North Chicago territory from Waukegan Township High School District No. 119.

> Miss Wilma Bartimus
> Mr. Carlton Buerger
> Mr. Homer Hankenson
> Miss Patricia Haviland
> Miss Eloise Hindman
> Mrs. Evelyn Hickox
> Mr. Joseph Schwaninger
> Miss Rowena Vaniman
> Mr. Lawrence Wieczorek
> Miss Avis Youngberg
> Mr. Ralph Lane

After due consideration thereof by the Board, the President put the question, and upon roll call being had, the following members voted: Ayes: Hathorne, Long, McDonough, Seidenfeld, and Smith. Nays: Jones and Kirby. Absent: None. The majority of votes being cast in favor of the motion, President Jones declared the motion carried."

Prior to that, on February 15, 1954, the Education Committee of the defendant Board had addressed a communication, recommendation, letter, or report to the defendant Board which was as follows:

"February 15, 1954

Board of Education
WTHS District #119
Waukegan, Illinois

Honorable President, Ladies and Gentlemen:

Your Education Committee recommends that the following named teachers who will have completed the two-year probationary period of teaching in the Waukegan Township High School at the end of the present school year, be tendered contracts to teach here for

85

1954-55 and be given full tenure status:

Mr. John E. Baker
Miss Margaret Broadhurst
Mr. Jaime McClendon
Mrs. Carolyn Memmen

Your Education Committee further recommends that the decision of the Board of Education to decrease the number of teachers employed by the Board for the school year 1954-55 be given the following teachers:

Miss Wilma Bartimus
Mr. Carlton Buerger
Mr. Homer Hankenson
Miss Patricia Haviland
Miss Eloise Hindman
Mrs. Evelyn Hickox
Mr. Joseph Schwaninger
Miss Rowena Vaniman
Mr. Lawrence Wieczorek
Miss Avis Youngberg
Mr. Ralph Lane

and that written notice be given these teachers by registered mail together with a statement of honorable dismissal and the reason therefor, namely the separation of North Chicago Territory from Waukegan Township High School District #119.

Respectfully submitted,

/s/ Mrs. Ruth M. Hathorne, Chairman
/s/ Mrs. Fredrica Smith
/s/ Mrs. Marshall McDonough"

The letters of March 16, 1954 from the school principal to the plaintiffs read as follows:

"This letter will confirm our recent conversation concerning the decision of the Board of Education to decrease the number of teachers employed by the Board

86

for the school year 1954–55 because the separation of North Chicago territory from Waukegan Township High School District #119 will diminish our enrollment by about 581 students. Accordingly your employment by the Board of Education of this high school district will terminate with the end of the present school year.

Please consider this an honorable dismissal due solely to the above mentioned facts and feel free to call upon me for any assistance I may be able to render in the matter of your securing other employment.

The Board of Education joins with me in thanking you for your fine contribution to the education of the youth in this community during your tenure here. We wish you every success in your continuing professional growth."

The plaintiffs' written requests of March 25, 1954 to the defendant Board for hearings need not be set forth in detail as there is no dispute as to their adequacy or timeliness, if under the facts and law the plaintiffs were entitled to an administrative hearing.

Among other grounds or alleged errors relied upon for reversal of the administrative decision removing or dismissing the plaintiffs, the plaintiffs urge that the same is contrary to the law; the record of the defendant Board does not justify the dismissals; the plaintiffs were deprived of their rights without due process; no sufficient record, or no record at all, of the existence of cause or reason for their dismissals was made; the resolution of the defendant Board is void and ineffective to dismiss the plaintiffs as teachers because it does not state a statutory cause of dismissal; the dismissals are contrary to Section 24–3 of The School Code; and the Teacher Tenure Law gives the plaintiffs contractual rights which are property rights. Other matters are urged by the plaintiffs, including the allegations that the defendant Board had in its employ on March

16, 1954 other teachers who had not yet attained contractual continued service status, some of whom will continue to be teachers for the ensuing school year 1954–5, teaching subjects the plaintiffs are qualified to teach, and that if there be a decision of the defendant Board to decrease the number of teachers employed or to discontinue some particular type of teaching service then the plaintiffs, as teachers having contractual continued service status, are entitled to preference in being retained over such other teachers who do not have such status, which allegations are the subject matter of paragraph 12 and that part of paragraph 15 of the complaint which were stricken, but in the view we take of the case it will not be necessary to discuss such other matters.

Section 24–2 of the Teacher Tenure Law, a part of The School Code (Ch. 122, Ill. Rev. Stats., 1953, par. 24—2) provides, in part, so far as here material, as of the time of the events here concerned:

". . .

Any teacher who has been employed in any district as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least sixty days before the end of such period. . . .

Contractual continued service shall cease at the end of the school term following the sixty-fifth birthday of any teacher, and any subsequent employment of such a teacher shall be on an annual basis.

Contractual continued service shall continue in effect the terms and provisions of the contract with the teacher during the last school term of the probationary period, subject to the provisions of this Act and the lawful regulations of the employing board. This sec-

88

tion and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided. Contractual continued service status shall not restrict the power of the board to transfer a teacher to a position which the teacher is qualified to fill or to make such salary adjustments as it deems desirable, but unless reductions in salary are uniform or based upon some reasonable classification, any teacher whose salary is reduced shall be entitled to a notice and a hearing as hereinafter provided in the case of certain dismissals or renewals."

Section 24–3 of that law (Ch. 122, Ill. Rev. Stats., 1953, par. 24—3), provides, in part, so far as here material, as of the time of the events here concerned:

"Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Sections 6–36 and 7–21, in the manner hereinafter provided. If the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service, written notice shall be given the teacher by registered mail at least sixty days before the end of the school term, together with a statement of honorable dismissal and the reason therefor, but if the position so discontinued is reinstated within a period of one calendar year it must be tendered to the teacher dismissed because of such discontinuance. If the dismissal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within ten days after the service of notice as herein provided. . . ."

Sections 6–36 and 7–21(16) of The School Code (Ch. 122, Ill. Rev. Stats., 1953, pars. 6—36 and

89

7—21(16)), which are referred to in the above Section 24–3, authorize the dismissal of a teacher for, respectively, incompetency, cruelty, negligence, immorality, or other sufficient cause, or whenever, in the Board's opinion, he is not qualified to teach, or the interests of the schools require it, subject, as to Section 7–21(16), to the provisions of Sections 24–2 to 24–7. Sections 6–36 and 7–21(16) have no application to the present case.

█ Under Section 24–2, the plaintiff teachers had entered upon contractual continued service, which, according to the statute, evidently continued in effect for the ensuing school year 1954–5 the terms and provisions of the contracts with the teachers during the last school term of the probationary periods, subject to the provisions of the Teacher Tenure Law, which did not modify any existing power of the defendant Board except with respect to the procedure of the discharges of the plaintiff teachers and reductions in salary as thereafter provided. The Teacher Tenure Law was enacted primarily for the protection of Illinois teachers who, prior to its enactment in 1941, served at the pleasure of the Boards of Directors or Education as to any renewals of their periods of service. Its object was to improve the Illinois school system by assuring teachers of experience and ability a continuous service and a rehiring based upon merit, subject to the provisions of that law, rather than failure to rehire upon non-statutory reasons: Donahoo v. Board of Education of School Dist. No. 303, 413 Ill. 422 (1953); Betebenner v. Board of Education of West Salem Community High School Dist. No. 201, Edwards County, 336 Ill. App. 448 (1949) Fourth Dist.

Under Section 24–3, notwithstanding the plaintiffs' entry upon contractual continued service they may be removed or dismissed for the reasons or causes provided in Sections 6–36 and 7–21(16), in the manner

thereafter provided,—which sections, as we've said, have no application here. And *"if the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service"* then written notice thereof shall be given the teacher in a certain prescribed manner. But *"if the dismissal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested"* by the teacher in a certain prescribed manner, in which event the written notice of the charges must be served in a certain manner, the hearing held and decision rendered in a certain manner, it is to be public if requested by the teacher or board, the teacher may be present, with counsel, may cross-examine witnesses, may offer evidence, present defenses, have subpoenas issued, the testimony is to be under oath, a record is to be kept, and a reporter shall take the testimony.

■ ■ It would appear that *"if the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service"* all the Board is required to do is give written notice thereof as prescribed, and that no administrative hearing is necessary, under those circumstances,—at least we shall so assume for the purposes of this case. If so, then that is the only type of removal or dismissal which can be had without a hearing, if the teacher wants a hearing, for *"if the dismissal or removal is for any other reason or cause"* a hearing must be had, if requested by the teacher, with all the benefits, advantages, rights, and privileges permitted upon such a hearing under the statute. Removal or dismissal without out a hearing, under the second sentence of that section on the basis and under the circumstances therein stated, is, in other words, an exception to the general

91

rule stated in the third sentence that dismissal or removal for any other reason or cause cannot be done without a hearing, if requested by the teacher: Donahoo v. Board of Education of School Dist. No. 303, 346 Ill. App. 241 (1952) Third Dist., reversed on other grounds, 413 Ill. 422. And exceptions in a statute, being intended to qualify what is otherwise generally affirmed in the statute, are to be strictly construed: People ex rel. Bowen v. Hughes, 370 Ill. 255 (1938); State Pub. Util. Commission v. Early, 285 Ill. 469 (1918); Doubler v. Doubler, 412 Ill. 597 (1952). It is the defendant Board's position here that the removals or dismissals were done under a part of that second sentence,—*"if the removal or dismissal results from the decision of the board to decrease the number of teachers employed by the board,"* that it was complied therewith, and that no hearing is required.

██ ██ Removal or dismissal under that second sentence, on the basis and under the circumstances therein stated, without a hearing (as we shall assume, for this purpose, is permissible) being an exception to the general rule on dismissals or removals, and, if it applies, the plaintiff teachers then having none of the carefully provided for benefits, advantages, rights and privileges attached to a hearing in case of a removal or dismissal for any other reason or cause, it is of the utmost importance to determine whether the record here shows that the necessary conditions and circumstances precedent to the application of that second sentence have in fact been met and satisfied here. We think not. In particular, it does not apply unless the removal or dismissal *"results from the decision of the board to decrease the number of teachers employed by the board or to discontinue some particular type of teaching service."* A *"decision of the board"* to that effect and an order of removal or dismissal resulting from that decision, are necessary conditions precedent to the application thereof. We cannot read out of the

92

statute words which the legislature has placed therein any more than we can read into it words which are not within the manifest intention of the legislature as determined by the statute itself: Donahoo v. Board of Education of School Dist. No. 303, supra. It is a question for the legislature to specify the conditions and reasons upon which a preexisting contract of employment may be terminated: Pack v. Sporleder, 394 Ill. 130 (1946).

 Under Sections 7–7 and 7–14 of The School Code (Ch. 122, Ill. Rev. Stats., 1953, pars. 7—7, 7—14), the Board of Education has all the duties and powers of school directors as set forth in Article 6 thereof, is subject to the same limitations, and in addition has certain other duties and powers therein enumerated. And under Article 6, Sections 6–9 and 6–10 (Ch. 122, Ill. Rev. Stats., 1953, pars. 6—9, 6—10) no official business shall be transacted by the directors except at a regular or a special meeting, and the clerk shall keep in a punctual, orderly, and reliable manner a record of the official acts of the Board which shall be signed by the president and the clerk. Powers conferred upon a Board of Education can be exercised only at regular or special meetings of the Board: Pratt v. Board of Education of Dist. No. 61, Kankakee County, 326 Ill. App. 610 (1945) Second Dist. Proper minutes and records should be kept by a Board of Education to the end that the persons who are carrying the tax load may make reference thereto and that future boards may be advised of the manner of disposition of questions that have arisen: Donahoo v. Board of Education of School Dist. No. 303, supra. A record is required to be kept of the essential steps in the exercise by the Board of its powers; every essential proceeding in the course of its exercise of its powers must appear in some written and permanent form in the records of the body authorized to act upon them; and where public officials are required to keep a record of their proceedings such

record constitutes the only lawful evidence of action taken, and cannot be contradicted, added to, or supplemented by parol, assuming the record correctly states the facts as to what occurred, and subject to the Board's limited power (not applicable in the case at bar) in a proper case and under proper circumstances to amend its record to make it correctly state the facts as to what occurred: Jackson v. School Directors Dist. No. 85, 232 Ill. App. 102 (1924) Second Dist.; People ex rel. Prindable v. New York Cent. R. Co., 400 Ill. 507 (1948); People ex rel. Toman v. Chicago Heights Terminal Transfer R. Co., 375 Ill. 590 (1941); Gietl v. Com'rs of Drain. Dist. No. 1, 384 Ill. 499. "Decision" means the act of deciding or settling a dispute or question by giving a judgment; the act of making up one's mind; a judgment or conclusion reached or given; a determination: Webster's New World Dictionary, p. 380; State Public Utilities Commission ex rel. Illinois Cent. R. Co. v. Thedens, 291 Ill. 184 (1920). We must, therefore, examine whatever official business in this respect was transacted by the defendant Board at a regular or special meeting insofar as it is reflected in the record before us of the official acts of the Board kept by its clerk, or comparable official. A *"decision of the board,"*—an official act of deciding,—of the type indicated in the second sentence of Section 24–3 and of the importance it is as a condition and circumstance precedent to the application of that sentence and as a foundation, reason, or cause for these dismissals, must be found somewhere in the official records of the defendant Board or that sentence furnishes no foundation, reason or cause for the dismissals.

█ The resolution of the defendant Board of March 15, 1954 set out above is, admittedly, the only official act or decision of the defendant in this record, and this record, the defendant says, is entire, full, complete, and accurate. It must stand or fall as is. We

94

cannot read into it by interpolation, implication, or inference, things which are not in fact in it. That resolution is not a decision of the Board to decrease the number of teachers employed by the Board. The subject of *decreasing* that *number* is not therein referred to at all. It is simply a decision honorably discharging the plaintiffs (and some others). It recites a so-called *"reason"* for their discharge,—*"the separation of North Chicago Territory from Waukegan Township High School District No. 119,"*—which is not a statutory reason or cause for removal or dismissal. That circumstance is not mentioned in the statute, and is, at best, only a part of some general background information. If the legislature had intended that mere separation of territory from a school district should, in and of itself, without more, be a reason or cause for removal or dismissal of a teacher, it could readily have said so in Section 24–3, but it has not so provided. And it is not our province to read such words into the statute. It cannot be determined from that resolution what the number of teachers employed by the Board was on March 15, 1954, or what that number would be for the ensuing school year 1954–5, or that the number of teachers employed by the board has been decreased at all, or, if so, in what number and to what extent. For aught that appears in the resolution the total number of teachers employed by the board may have remained the same, or for that matter, even been increased. The resolution does not say one way or the other. It throws no light whatever on the very crux of this dispute. Whatever else it may be as a final administrative decision honorably discharging the plaintiffs, which it is, it is not a *"decision of the board to decrease the number of teachers employed by the board"* within the meaning of that second sentence of Section 24–3. This is not a mere matter of form, but of the substantive rights, powers, and duties of the plaintiffs and defendant. The general background information recited in the

95

resolution, if true, together with several other material facts such as reduction in pupils, etc., if true, might have furnished some good reason for the defendant Board to decide to decrease the total number of teachers employed by it, but so far as this record is concerned it either never in fact made such a decision, or, if it did, the same is not reflected in its records.

The prior communication, recommendation, letter, or report of the Education Committee of the defendant Board of February 15, 1954 recites, among other things, "your Education Committee further recommends that the decision of the Board of Education to decrease the number of teachers employed by the Board for the school year 1954–55 be given" the plaintiffs (and some others), "and that written notice be given these teachers by registered mail together with a statement of honorable dismissal and the reason therefor, namely the separation of North Chicago Territory from Waukegan Township High School District #119." That communication is, of course, not, in itself, an official act or decision of the defendant Board, does not aid the record, and does not, by its vague, general language identify when the alleged "decision of the Board" was taken, or to what extent it allegedly decreased the number of teachers employed by the Board, or where the official record of any such alleged decision may be found. Beyond that, the reference therein, as of February 15, 1954, to "the decision of the Board of Education to decrease the number of teachers" appears only to compound the confusion, speaking, as it apparently does, in the past tense of some such alleged decision of the Board presumably taken prior to the date of that letter, of which there is nothing at all in this record. That reference simply casts further doubt on the legal effectiveness of the subsequent resolution of the Board, of March 15th, as being such a decision if that decision (of which there is no record) had already presumably been made prior to February

96

15th, as that letter would seem to indicate. Why would the defendant Board be allegedly making such an official decision March 15th, if it had already made such decision prior to February 15, and if it had made such decision prior to February 15, where is the record thereof?

The letters of the school principal to the plaintiffs of March 16, 1954 reciting, among other things, "This letter will confirm our recent conversation concerning the decision of the Board of Education to decrease the number of teachers employed by the Board for the school year 1954–55 because the separation of North Chicago territory from Waukegan Township High School District #119 will diminish our enrollment by about 581 students" is, again, of course, not, in itself, an official act or decision of the defendant Board, does not aid the record, goes beyond and outside the only official act or decision of the defendant Board in this record, and does not, by its vague, general language, identify when the alleged "decision of the Board" was taken, or to what extent it allegedly decreased the number of teachers employed by the Board, or where the official record of any such alleged decision may be found.

Accordingly, the necessary condition and circumstances precedent to the application of that second sentence of Section 24–3 are simply not met and satisfied here. So far as this record is concerned, there is no decision of the Board to decrease the number of teachers employed by the Board or to discontinue some particular type of teaching service. The attempted removals or dismissals of the plaintiffs necessarily did not result from any such alleged decision, so far as this record is concerned. Hence, that part of Section 24–3 was not complied with and provides no foundation for the removals or dismissals. There being no contention there was any other reason or cause for the attempted removals or dismissals, and no effort having

97

been made to comply with the balance of Section 24-3 as to specific charges and a hearing, then the balance of Section 24-3 either has no application, or was not complied with, and in either event provides no foundation for the removals or dismissals. The attempted removals or dismissals indicated by the resolution of March 15, 1954 are, therefore, not in conformity with the statute, have no substantial foundation, and are illegal, and the final administrative decision making such removals or dismissals must be reversed.

The purpose of judicial review of a decision of an administrative agency is to keep the agency within the jurisdictional and judicial bounds prescribed by law, and to guard the rights of parties guaranteed by the Constitution or Statutes, and for that purpose the court may and must, if necessary, reexamine the facts and law and set aside an order of the administrative agency when the record shows it to be without substantial foundation: Curtis v. State Police Merit Board, 349 Ill. App. 448 (1953) Third Dist.; Illinois Cent. R. Co. v. Illinois Commerce Commission, 411 Ill. 526 (1952). The public schools are not, of course, created and supported for the benefit of the teachers therein, but for the benefit of the pupils, their parents, and the community at large, but it is necessary that a Board of Education adhere to whatever statutory provisions there may be regulating the employment, removal, or dismissal of teachers: Wilson v. Board of Education of School Dist. No. 126 Union, Madison County, 327 Ill. App. 338 (1945) Fourth Dist.

The only cases the defendant refers us to are: Roth v. Kaptowsky, 401 Ill. 424 (1948); Smith v. Board of Education of Oswego Community High School Dist., 405 Ill. 143 (1950); Donahoo v. Board of Education of School Dist. No. 303, 413 Ill. 422 (1953); McNely v. Board of Education of Community Unit School Dist. No. 7, 5 Ill.App.2d 84 (1955) Third Dist.; and Anderson v. Board of Education of School Dist.

98

No. 91, 390 Ill. 412 (1946). Roth v. Kaptowsky and Smith v. Board of Education of Oswego Community High School Dist., are cited simply for the general principles that where the language used in a statute is plain and certain it must be given effect by the courts; a court cannot legislate but must merely interpret the law as announced by the legislature; and the wisdom, as a matter of policy, of legislation is a question for the legislature and not for a court. Donahoo v. Board of Education of School Dist. No. 303 is similarly cited for such general principles, and we've previously referred to that case. Those principles are, of course, correct, we've endeavored to apply them here, and we do not perceive how they aid the defendant. McNely v. Board of Education of Community United School Dist. No. 7 and Anderson v. Board of Education of School Dist. No. 91 are similarly cited simply for the general principles that the Teacher Tenure Law casts a new liability upon school Boards and, therefore, should be construed strictly in favor of the Board. There is no contention by the defendant that those cases are in point on their facts or that they are determinative of the present case. Assuming the general principles thereof to be correct, such does not decide the present case favorably to the defendant, and it may be observed that the more recent case of Donahoo v. Board of Education of School Dist. No. 303, supra, does not cite either the McNely case or the Anderson case, the court evidently feeling they did not inhibit the construction of the Teacher Tenure Law there involved adversely to the Board.

The judgment order of the trial court of February 7, 1955 affirming the decision of the defendant Board of Education is, therefore, reversed and the cause remanded to the Circuit Court, with directions to proceed in accordance with the views expressed herein.

Reversed and remanded with directions.

DOVE, P. J. and EOVALDI, J., concur.