**Kenneth A. Shoot d/b/a/ Ridge Club, Plaintiff-Appellee v. Illinois Liquor Control Commission of the State of Illinois, Defendant-Appellant.**

**Gen. No. 48,984.**

First District, First Division.

February 25, 1963.

William G. Clark, Attorney General of the State of Illinois, of Chicago (William C. Wines, Edward A. Berman, and Cornelius F. Dore, Assistant Attorneys General, of counsel), for appellant.

Halfpenny, Hahn & Ryan, of Chicago (Richard F. Hahn, James F. Flanagan and Mary M. Shaw, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Finding that plaintiff had violated one of its rules (Rule 20), the Illinois Liquor Control Commission suspended plaintiff's retail liquor license. Upon review, the Superior Court reversed the Commission's action, on the ground that Rule 20 was an unreasonable exercise of its rule-making authority and, therefore, invalid. The Commission appealed to the Supreme Court which transferred the case to this court.*

The authority of the Commission, as set forth in the Liquor Control Act, includes the following:

> The State commission shall have the following powers, functions and duties:
>
> (1) To receive applications and to issue licenses to . . . retailers, . . . , in accordance with the provisions of this Act, and to suspend or revoke such licenses upon the State Commission's determination, upon notice after hearing, that a licensee has violated any provision of this Act or any rule or regulation issued pursuant thereto and in effect for thirty (30) days prior to such violation.
>
> (2) To adopt such rules and regulations consistent with the provisions of this Act which shall be necessary to carry on its functions and duties to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted and to distribute copies of such rules and regulations to all licensees affected thereby. (Ill Rev Stats, c 43, § 108.)

---

* It appears from a stipulation of the parties seeking an early determination of this case that the issue here is also involved in more than 1,000 cases pending throughout the state.

■ Proper construction of this section requires us to consider it in the light of the first section of the Act which provides:

This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors. (Ill Rev Stats, c 43, § 94.)

The rule in question reads as follows:

No licensee of the Commission shall purchase or possess a Federal Occupational Wagering stamp or the $250.00 Annual Occupational Gaming Device stamp, issued by the Internal Revenue authorities of the United States, . . . for the premises licensed by the Commission. Violation of this rule shall be grounds for revocation or suspension of any license issued by the Commission as provided under Article III, Section 12, Subsection 1 of the Illinois Liquor Control Act.*

Evidence adduced at a hearing before the Commission showed that on January 25, 1962 plaintiff purchased a $250 Annual Occupational Gaming Device stamp in direct violation of the rule. After notice, complaint, citation, and hearing by defendant, the retail liquor license of plaintiff was suspended for five days, and complaint to review this administrative decision was filed in the Superior Court. After hearing arguments of counsel, that court reversed the suspen-

---

* This rule was promulgated by the Commission after obtaining an opinion of the Attorney General that it had authority to make such a rule. (Attorney General's Opinions, Latham Castle, 1958, page 192.)

sion order on the sole ground, as stated by the court, that "Rule 20 of the Illinois Liquor Control Commission is unreasonable, arbitrary, unjust and not a reasonable exercise of the authority of the Commission and said rule is therefore invalid." This appeal followed.

■ It is accepted as beyond the contentions of this case that it is properly within the scope of the Commission's power to suspend or revoke a license when gambling is conducted on licensed premises, or when a licensee is found in possession of a so-called "slot machine" which, since enactment of a statute in 1895, has been declared contraband as a gambling device. (Ill Rev Stats, c 38, §§ 28-2, 28-5; Commission Rule 3.)

The device in question, however, is not the storied "slot machine," but a newer type of mechanical device known as a pinball machine. In 1942 the pinball type of machine was held to be a gambling device within the definition of the statute referred to above. (People v. One Pinball Mach., 316 Ill App 161, 44 NE2d 950; Petition for leave to appeal denied, 321 Ill App XIII.) Thereafter, the legislature amended the statute by providing that a coin-in-the-slot operated mechanical device which rewards the player with only a right to replay is not to be considered a gambling device, and any right to replay so obtained is not to be considered a valuable thing, within the meaning of the Act.* (Laws of 1953, p 929, c 38, §§ 341, 342.)

In People v. One Mechanical Device, 11 Ill2d 151, 142 NE2d 98 (1957), it was held that the specific exemption of the amendment applied to a pinball machine of the same general type as the one involved in the instant case, and that the machine was, therefore, not a gambling device per se. The court further

_____

* Essentially the same exception was incorporated in the Criminal Code of 1961, effective January 1, 1962 and applicable to the case at bar. (c 38, § 28-2.)

held that "since there is no evidence in the record that any money or anything else of value was ever staked, hazarded, bet, won or lost upon the action of the defendant device" the order for its destruction was reversed.* (Page 156.)

■■ We must reach the conclusion, therefore, that the Illinois Criminal Code does not proscribe the pinball machine in question as a gambling device per se. It is also undisputed that this machine was licensed under the Illinois Revenue Act as an amusement device, the record disclosing that, upon its acquisition, plaintiff promptly paid the applicable Illinois license fee of $50. (Ill Rev Stats, c 120, § 481b.) Furthermore, defendant must concede that the record contains no proof of gambling on plaintiff's premises. We recognize also that the purchase of a Federal $250 Annual Occupational Gaming Device stamp is not, in itself, an unlawful act. We do not believe, however, that determination of these four points, as outlined, requires us to affirm the order of the Superior Court, or points necessarily to the decision appropriate to this case.

■ The innocent character of any piece of equipment indicates nothing about the use to which it will be put. A deck of cards, for example, may be used strictly for amusement, and yet it is a device which can be, and is, extensively used for gambling. Surely, an amusement device such as a pinball machine *can* be used for gambling.

Suppose, then, that a liquor licensee, in possession of a pinball machine, were to make to the Commission

---

* Three justices dissented, principally on the ground that the record did not show that the device was so constructed as to make the result depend in part on the skill of the player. This latter was one of the conditions of the exception added to the statute by the 1953 amendment.

It should be noted that the language of the majority opinion, which we have quoted, clearly recognizes that a pinball machine could be used as a gambling device.

436

a formal declaration that he is using or intends to use the device for gambling purposes. Would the Commission, in such a circumstance, be justified in suspending his license? Or would the Commission be acting reasonably, and in proper exercise of its authority, if it were to adopt a rule warning licensees that it might suspend or revoke upon any clear manifestation by a licensee that he is using or intends to use his premises for gambling? We think the answer to both these questions must be in the affirmative. Under those circumstances, the Commission should not be put to playing a game of cat-and-mouse with the licensee, and be powerless to suspend the license privilege unless the local police are able to catch the licensee in the act of doing what he has declared he is doing or intends to do. This is too serious and important a matter to permit a licensee thus to challenge the Commission, and meanwhile retain the privilege of his license.

That the holding of a license is a privilege and not a right, there can be no doubt. The Act, itself, states: "A license shall be purely a personal privilege, . . . and shall not constitute property, . . . ." (Ill Rev Stats, c 43, § 119.) And it "involves no constitutional right which is violated by mere curtailment or termination of its exercise." (Schreiber v. Illinois Liquor Control Commission, 12 Ill2d 118, 121, 145 NE2d 50; Great Atlantic & Pacific Tea Co. v. Mayor and Com'rs of Danville, 367 Ill 310, 317, 11 NE2d 388.) That a licensee should be required to base his business on so unstable a foundation is due to the nature of the enterprise he has chosen. "The retail sale of intoxicating liquors when not properly conducted is a business fraught with danger to the community. The entire Dram Shop Act, with its ofttimes described 'harsh' provisions, indicates the legislature's awareness of this fact." (Daley v. License

Appeal Commission, 11 Ill App2d 421, 426, 138 NE2d 73.)

■ In administering the Liquor Control Act it is only logical, therefore, that the Commission should not be required to limit suspension, revocation, or denial of license, to cases involving proved violation of law. Thus, for example, the privilege of license may not be granted to a non-resident of the community wherein the premises are located; to a person who is not a citizen of the United States; to a law-enforcing public official, mayor, etc. (Ill Rev Stats, c 43, § 120.)

Further, the Act provides that in a hearing before the Commission a licensee shall submit himself to examination, and failure to do so shall constitute an admission that he has violated the Act. (Ill Rev Stats, c 43, § 153.) In Hornstein v. Liquor Control Commission, 412 Ill 365, the licensee refused to be examined, claiming his constitutional privilege against self-incrimination. After reviewing the nature of a liquor license, the Supreme Court upheld the validity of this provision of the Act, stating that "while Hornstein has a constitutional privilege against self-incrimination, he has no constitutional right to operate a tavern; it is that right which is in issue here." (Page 372.)

The Hornstein decision, we believe, helps to delineate the scope of the authority of the Commission by indicating the character of controls which would be "consistent with the provisions of this Act," and, in that way, furnishes the answer to plaintiff's contention that Rule 20 is invalid because it raises an irrebuttable presumption of guilt. The language of the statute that a licensee's failure to submit to examination "shall constitute an admission that he has violated the provisions of this Act" is simply another way of expressing an irrebuttable presumption, and even without reference to any particular provision of the Act which will be presumed to have been violated.

The same decision also suggests, by analogy, the answer to plaintiff's argument that the rule is unreasonable in providing for suspension of a license on account of the doing of a lawful act. In the Hornstein case the act done was not only lawful, but an exercise of a constitutional right on the part of the licensee.

■ Consideration of the Act in its entirety leads to the inescapable conclusion that the authority of the Commission, in the public interest, to impose conditions upon the privilege of a liquor license is very broad, indeed.*

Let us consider, then, the nature of plaintiff's action when he purchased the Federal Gaming Device stamp and the decision which he voluntarily made when he elected to purchase the stamp in direct violation of Rule 20.

The pertinent parts of the Internal Revenue Code (USCA Title 26) provide:

§ 4461. Imposition of tax.

(a) In general.—There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

(1) $10 a year, in the case of a device defined in paragraph (1) of section 4462(a);

(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a); . . .

§ 4462. Definition of coin-operated amusement or gaming device.

---

* The New Jersey court in Benedetti v. Board of Commissioners, 113 A2d 44, 46 (1955), construing a similar statute, held that "the right to prescribe the conditions under which intoxicants may be sold is practically limitless."

(a) In general.—For purposes of this sub-chapter, the term "coin-operated amusement or gaming device" means—
 (1) any machine which is—

 (A) a music machine . . . ,
 (B) a vending machine . . . ,
 (C) an amusement machine operated by means of the insertion of a coin, token, or similar object, but not including any device defined in paragraph (2) of this subsection, or
 (D) . . . ; and

 (2) any machine which is—

 (A) a so-called "slot" machine which operates by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens . . . .

In United States v. Korpan, 354 US 271, 273 (1957), a pinball machine was held to be a gaming device requiring purchase of a $250 stamp. The statement of facts in that case indicates that a successful player would receive free games, and then "had the option of either playing the free games or of cashing them in at a designated rate."

United States v. One Bally Dude Ranch, etc., 144 F Supp 930 (MD Tenn 1953) was an action by the United States to forfeit a coin-operated pinball machine. The District Court permitted forfeiture. In his opinion the judge noted that the tax was imposed not against the machine but against a person who operates it or permits it to be operated on his premises. He noted further that a pinball machine could be

operated for amusement only, or it could be employed as a gaming device. He then stated at pages 931–2:

> I am, therefore, of the opinion that when a person permits the use on his premises of one of these pinball machines that is operated for amusement only, he is subject only to the $10 tax. But if he gives cash, premiums, merchandise, or tokens as a payoff for the successful operation of the machine, then he is subject to the $250 tax. It is all a question of the use to which the machines are put by the person who maintains them, or operates them, in his place of business. That is, if he operates them as an amusement device, he is subject to a $10 tax for each machine; if he operates them as a gaming device, he is subject to a $250 tax for each machine.*

After acquiring possession of the pinball machine in the case at bar, plaintiff was confronted simultaneously with the Commission's Rule 20, with the Illinois Revenue Act, and with the Federal statute. He paid the license fee to Illinois on the proposition that the machine was an amusement device. He could then have been consistent with that act and avoided violation of Rule 20 if he had purchased a $10 Federal stamp, indicating that he was using or intending to use the equipment solely as an amusement machine. The machine itself would fall within the definition of either paragraph (1) or paragraph (2) of section 4462(a). Plaintiff's decision rested necessarily, therefore, upon the use which he was making or planning to make of the machine. He chose to buy the $250 stamp for a gaming device.

---

* It appears to us that the option of a winning player to receive cash was a vital fact in the Korpan case, and that decision, therefore, does not affect the correctness of the conclusion reached by the judge in the case of One Bally Dude Ranch.

441

Plaintiff argues that this election on his part was not voluntary because, had he not purchased the gaming device stamp, the Federal government might have placed a lien on his business. We are not impressed. If plaintiff had not used, and had no intention of using, the machine for anything other than amusement, he could have purchased the $10 stamp and, if necessary, resorted to the procedures provided by the Federal statutes and Revenue Rulings to sustain his position.

Under all the circumstances, the purchase of the gaming device stamp could not have been inadvertent. Both the price—$250—and the subject matter refute such a contention. Nor was there anything about the buying of this stamp which could be said to be a matter solely between plaintiff and the Federal tax collector, because the Illinois Criminal Code requires the purchaser of such a stamp to register it with the county clerk in the county where he conducts his business, and failure to register is punishable by fine or imprisonment. (Ill Rev Stats, c 38, § 28-4.) This is but another expression by the legislature of the public policy of the state on the subject of gambling, and further demonstrates the strict control intended.

██ Based on all of the foregoing, we interpret plaintiff's purchase of the $250 Annual Occupational Gaming Device stamp as a clear and formal declaration by him that he was using or planning to use the pinball machine on his premises for gambling purposes. We, therefore, believe that the Commission's Rule 20, authorizing suspension or revocation on account of such a purchase, is a reasonable and valid exercise of its rule-making authority toward the end of protecting the public health, safety and welfare; that it does not extend the substantive provisions of the Act but is consistent therewith.

Since there is no doubt about the rule's violation by plaintiff, the order of the Superior Court will be reversed, and the order of the Illinois Liquor Control Commission suspending plaintiff's retail liquor license will be affirmed.

Reversed.

BURMAN, P. J. and MURPHY, J., concur.