(No. 37897.—

Kenneth A. Shoot, d/b/a Ridge Club, Appellant, *vs.* Illinois Liquor Control Commission, Appellee.

*Opinion filed March 18, 1964.—Rehearing denied May 19, 1964.*

Underwood, J., took no part.
Schaefer, J., dissenting.

HALFPENNY, HAHN & RYAN, of Chicago, (HAROLD T. HALFPENNY, RICHARD F. HAHN, JAMES F. FLANAGAN, MARY M. SHAW, and JAMES A. BROWN, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, EDWARD A. BERMAN, CORNELIUS DORE, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

We have granted leave to appeal in this cause to review a judgment of the Appellate Court finding that a certain rule promulgated by the Illinois Liquor Control Commission was a reasonable and valid exercise of the commission's statutory rule-making authority. (*Shoot* v. *Illinois Liquor Control Com.* 39 Ill. App. 2d 431.) In so doing, the Appellate Court reversed an earlier judgment of the superior court of Cook County which found the rule to be unreasonable, arbitrary and unjust.

Pertinent factual background shows that the rule at issue, Rule 20, provides the following: "No licensee of the Commission shall purchase or possess a Federal Occupational Wagering stamp or the $250.00 Annual Occupational Gaming Device stamp, issued by the Internal Revenue authorities of the United States, * * * for the premises licensed by the Commission. Violation of this rule shall be grounds for revocation or suspension of any license issued by the Commission as provided under Article III, Section 12, Sub-section 1 of the Illinois Liquor Control Act." Involved in this particular case is the purchase of what the rule refers to as "the $250.00 Annual Occupational Gaming Device stamp," an excise tax imposed by the Federal government under authority of sections 4461 and 4462 of the United States Internal Revenue Code. (26 U.S.C.A. §§ 4461, 4462.) Those sections, aimed at taxing "coin

operated amusement or gaming device[s]," provide in essential part for a $10 tax to be paid annually by persons who maintain for use or permit to be used on their premises such devices as music machines, vending machines or amusement machines, and for an annual tax of $250 to be paid by such persons for any machine which is a so-called "slot" machine which operates "by means of the insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive, cash, premiums, merchandise, or tokens."

Speaking in *United States* v. *Korpan,* 354 U.S. 271, 1 L. ed. 2d 1337, (1957), our nation's highest court has held that modern day pinball machines fall within the statutory definition of a "so-called 'slot' machine," and there found the defendant guilty of a wilful failure to obtain a $250 device stamp under facts showing that those who played defendant's machine had an option of converting free games registered on the machine into cash at a designated rate. And while we would interpret this decision to mean that a $10 amusement stamp would have been sufficient had it not been for the element of a cash payoff, (see: *United States* v. *One Bally Dude Ranch Coin-Operated Pin-ball Machine,* (M.D. Tenn. 1953), 144 F. Supp. 930; *McNeice v. City of Minneapolis,* 250 Minn. 142, 84 N.W.2d 232; *Washington Coin Machine Assn.* v. *Callahan,* (D.C. cir.) 142 F.2d 97,) inferior Federal courts, and apparently the Internal Revenue authorities, have construed it as holding that pinball machines are gambling devices *per se* and require the $250 stamp, regardless of whether "cash, premiums, merchandise or tokens" are actually received, where the features, characteristics and functions of the machines themselves involve the element of chance and are such that the machines *may* deliver or entitle the players to receive cash, *etc.* (*Szybski* v. *United States,* (E.D. Wis. 1963,) 220 F. Supp. 806; *Harvey v. United States,* (D. Ore. 1962,) 214 F. Supp. 80;

*United States* v. *Nine Gambling Devices*, (S.D. Ill. 1957,) 59-2 U.S. Tax Cases ¶ 15,257, see also: *Singleton* v. *Mathis*, (8th cir.) 284 F.2d 616; *United States* v. *Five Gambling Devices*, (7th cir.) 252 F.2d 210.) In brief it is not the actual use to dispense cash or premiums which controls, but the adaptability of the pinball machine for such purpose. By way of contrast, it is the view in this jurisdiction that a pinball machine is not a gaming device *per se* since its use may be solely for entertainment purposes. (*People* v. *One Mechanical Device*, 11 Ill.2d 151.) Indeed, our legislature has expressly provided in the Criminal Code that a gambling device does not include: "A coin-in-the-slot operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part on the skill of the player and which returns to the player thereof no money, property or right to receive money or property." (Ill. Rev. Stat. 1963, chap. 38, par. 28—2(1).) In the view we take it is irrelevant whether such a machine is or is not a gaming device *per se*. We mention the distinctions between the State and Federal views merely to show the setting under which the stamp was purchased here, and the confusion attendant to the enforcement of the Commission's rule.

The facts of the instant case show that the plaintiff, Kenneth A. Shoot, who operated a tavern licensed by the Commission, purchased a $250 gaming device stamp on January 25, 1962. The exact nature of the device, other than its broad description as a pinball machine, does not appear in the record but, earlier, plaintiff paid the $50 tax imposed by the Illinois Revenue Act on "coin-in-the-slot-operated amusement device[s]." (Ill. Rev. Stat. 1961, chap. 120, par. 481b.1(a).) Upon learning of plaintiff's purchase the Commission issued a complaint against him and directed him to appear for a hearing. Evidence adduced at

that time showed that plaintiff had operated his business for nine years, and that he had purchased the $250 stamp, instead of the lesser $10 stamp, because he was threatened by Internal Revenue authorities with a lien on his business if he did not do so. There was no evidence, past or present, of gambling on plaintiff's premises or of the use of the pinball machine as a device by which the player received cash or other premiums. The commission, however, found that purchase and possession of the stamp violated Rule 20 and suspended plaintiff's State liquor license for a period of 5 days.

Plaintiff prosecuted an action for administrative review to the superior court of Cook County where, as we have noted, the order of the Commission was reversed and Rule 20 found to be arbitrary, unreasonable and unjust. On further appeal by the Commission, also as noted, the Appellate Court sustained the Commission and found the rule to be valid, rationalizing that since plaintiff "chose to buy the $250 stamp," when he could have bought the $10 amusement stamp, he announced his intention of using his machine as a gaming device. The Appellate Court was plainly wrong in this conclusion. Plaintiff's testimony, fortified by what is reflected in the Federal decisions previously referred to, makes it clear that he was given no choice, but was in effect coerced into buying the $250 stamp. This is the setting in which the operation and validity of the rule must be considered.

We can agree with the Appellate Court that the liquor business is constitutionally subject to more stringent regulation than a business conducted as a matter of right. Further, we can even agree that, in the public interest and due to the evils and dangers which would attend the businesses in combination, the statutory rule-making authority granted the Commission (Ill. Rev. Stat. 1963, chap. 43, par. 108(2),) could properly be exercised to keep its licensees from permitting gambling on licensed premises. Indeed,

such a rule would be no more than an implementation of section 28—3(b) of our Criminal Code, (Ill. Rev. Stat. 1963, chap. 38, par. 28—3(b),) which voids the State liquor license of any person who knowingly permits licensed premises to be used as a gambling place. But even our agreement in these respects provides no measure for the reasonableness of the rule at hand. Notwithstanding the fact that the State may impose regulations on the liquor traffic more stringent than would be permitted or allowable in other businesses, the imposition of such restraints must nevertheless be in keeping with constitutional restrictions. (*Weisberg* v. *Taylor,* 409 Ill. 384, 387.) As stated by Davis, Administrative Law, 1958, vol. 1, p. 456: "One who has no 'right' to sell liquor in the sense that the State may prohibit the sale of liquor all together, may nevertheless have a 'right' to fair treatment when state officers grant, deny, suspend, or revoke liquor licenses." Along the same lines, it has been reflected by judicial decision that when the liquor business is lawful, as it now is, the regulations provided therefore must be pursuant to a legitimate exercise of the State's police power, which precludes regulation that is arbitrary and discriminatory. (See: *Zanone* v. *Mound City,* 103 Ill. 552; *Harrison* v. *People ex rel. Raben,* 222 Ill. 150; *Giozza* v. *Tiernan,* 148 U.S. 721, 37 L. ed. 599; *Schwegmann Bros.* v. *Louisiana Board of Alcoholic Beverage Control,* 216 La. 148, 43 So. 2d 248, 253.) In our opinnon, Rule 20, insofar as it relates to the purchase or possession of "the $250.00 Annual Occupational Gaming Device stamp," is subject to the vice that it unfairly penalizes licensees on the basis of improper, arbitrary and unreasonable presumptions.

The only possible justification and purpose for Rule 20, consistent with the limits of the Commission's rule-making authority, is the suppression of gambling on licensed premises from which liquor is sold. The mere purchase or possession of the stamp is not gaming, nor is the stamp contra-

band, and, since these things are so, the necessary effect of the rule is to provide that the purchase or possession of the $250 device stamp is presumptive evidence of gambling. And, as the rule has been construed and administered by the Commission in this case, it appears that the presumption so created is given effect as a conclusive and irrebuttable presumption. We say this because the rule was enforced, and plaintiff penalized, notwithstanding the complete absence of proof of gambling on his premises and despite the affirmative showing that his purchase of the stamp was not motivated by any purpose of using the device for gaming purposes.

It is well settled that the legislature, subject to constitutional restrictions, may, without infringing upon the judiciary, provide by statute that a certain fact may be *prima facie* or presumptive evidence of another fact, provided reason and human experience so connect the ultimate fact with the fact proved that the existence of one may be fairly inferred from the other. To have force and validity, the inference of the existence of the ultimate fact from the fact proved must not be purely arbitrary, unreasonable or unnatural, and the evidentiary fact must have some fair relation or natural connection with the fact to be proved and some tendency to prove it. (*People* v. *Beck*, 305 Ill. 593; *People* v. *McBride*, 234 Ill. 146; 86 A.L.R. 179; 51 A.L.R. 1139.) But even if we assume that administrative agencies created by the legislature may create evidentiary presumptions under an express grant of rule-making authority, it is our further opinion that the evidentiary presumption attempted to be created with respect to the $250 device stamp is arbitrary and unreasonable.

Human nature being what it is, we believe it may be fairly inferred that there is an open and direct relationship between the purchase of a "Federal Occupational Wagering stamp" and the ultimate fact of gambling. (See: *Deitch* v. *City of Chattanooga,* 195 Tenn. 245, 258 S.W.2d 776.) As

the cited case observes, there could be no other reason for possessing such a stamp other than to engage in gambling. We also believe the same inferences would follow as to the $250 device stamp, if the purchasers were in fact given a true choice between the purchase of the $10 amusement device stamp and the $250 gaming device stamp. However, both the proof in the record and the pertinent Federal decisions show that owners of pinball machines which are so constructed that they could be used for gambling, must purchase the $250 stamp whether or not the machine is put to that purpose. Under such circumstances, complicated by the fact that such machines are not treated as gambling devices *per se* in this jurisdiction, we see no fair, open or direct relation between the purchase of the device stamp and the ultimate fact of gambling. This is clearly so where, as here, the purchaser was forced to purchase the stamp under threat of retaliation by Federal authorities. And because of the existence of that threat, we think the same result must obtain where the $250 stamp is purchased voluntarily. It is just as fair and reasonable to infer that the stamp was purchased to forestall threat or difficulty with the Federal authorities, as it is to infer an intent to use the machine for gambling. (*Cf. People ex rel. Polen* v. *Hoehler*, 405 Ill. 322, 328.) In neither case can it be fairly inferred that the device will be used for gambling. Indeed, such an inference becomes even less certain when we consider that purchasers of the Federal stamps are deemed to know that the use of the machine for gaming on their premises is a criminal act punishable by fine or imprisonment, or both, and the automatic nullification of their State liquor licenses. See: Ill. Rev. Stat. 1963, chap. 38, par. 28—3(b). *Cf. Jefferson* v. *Sweat*, (Fla. 1954,) 76 So. 2d 494.

The case of *Hornstein* v. *Illinois Liquor Control Com.* 412 Ill. 365, cited by defendants to sustain the reasonableness of the presumption created by its rule, is distinguishable. Involved there was a statute which provided that the

failure of a licensee to submit to an examination by the Commission on appeals from orders of a local commission granting, revoking or denying a license "shall constitute an admission that he has violated the provisions of this Act." (Ill. Rev. Stat. 1951, chap. 43, par. 153.) The opinion does not undertake to determine the reasonableness of the presumption, but states only that the legislature could validly create it (p. 372). Moreover, licensees contemplated by that statute could exercise a choice whether or not to appear before the commission. Here, licensees have no choice but to purchase a $250 stamp, leaving no certain presumption to follow.

For the reasons stated, we conclude that Rule 20 is invalid insofar as it relates to the $250 device stamp. Accordingly, the judgment of the Appellate Court is reversed, and the judgment of the superior court of Cook County is affirmed.

*Appellate Court reversed; superior court affirmed.*

Mr. JUSTICE UNDERWOOD took no part in the consideration or decision of this case.

Mr. JUSTICE SCHAEFER, dissenting:

I agree with the opinion of the majority insofar as it rejects the argument of the licensee that Rule 20 is invalid because the Commission has no legitimate concern with gambling on licensed premises. I agree, too, that "it may be fairly inferred that there is an open and direct relationship between the purchase of a 'Federal Occupational Wagering stamp' and the ultimate fact of gambling." But I do not agree with the conclusion that "Rule 20 is invalid insofar as it relates to the $250 device stamp."

The primary difficulty with the opinion, as I see it, is that it tests the validity of the rule of the Liquor Control Commission by standards that would be applicable if the licensee had been convicted of gambling solely upon proof

that he had purchased a \$250 federal gambling stamp. If that was the issue in this case, I would agree that proof of the purchase of a \$250 gambling stamp, without more, would not sustain a conviction. A somewhat similar issue was presented in the Florida case that is cited in the majority opinion, (*Jefferson* v. *Sweat,* 76 So. 2d 494 (Fla. 1954), and it is from that case that the opinion draws the argument that it makes with respect to presumptions.

But the rule of the Commission with which we are concerned looks to future conduct rather than to past transgressions. Whether or not a particular tavern keeper has been guilty of gambling has no bearing upon its validity. Indeed, the rule aims at the conduct of patrons quite as much as at the conduct of licensees. The approach of the majority opinion would, if applied generally, invalidate many provisions the validity of which can hardly be doubted. For example, section 9 of Article VI of the Liquor Control Act forbids access from the licensed premises to dwelling quarters, unless the dwelling quarters are those of the licensee and his family. (Ill. Rev. Stat. 1963, chap. 43, par. 128.) Upon the reasoning of the majority, this provision would seem to be vulnerable to attack on the ground that it establishes a presumption that dwelling quarters to which there is access from a tavern will be used for immoral purposes.

The validity of the Commission's rule depends upon whether or not it is reasonably related to the prevention of gambling on licensed premises. That relationship is obvious and indeed is conceded in the majority opinion. But the Commission has incorporated by reference in its rule the classification of gaming devices established by federal statute in connection with the impositon of a federal excise tax, (26 USCA 4461, 4462) and to invalidate the rule the opinion relies upon what it considers to be a fatal inconsistency between the law of Illinois and the federal classification incorporated in the rule. In my opinion the incon-

sistency upon which the opinion relies is either nonexistent or so minimal that it does not affect the basic relationship between the rule and the Commission's objective in adopting it.

Under the Illinois statute, gambling devices are subject to seizure, confiscation and destruction, but a "coin-in-the-slot-operated mechanical device played for amusement which rewards the player with the right to replay such mechanical device, *which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player* and which returns to the player thereof no coins, tokens or merchandise," is excluded from the statutory definition of a gambling device. Ill. Rev. Stat. 1961, chap. 38, pars. 28—2(a)(1) (italics supplied); 28—5.

On its face, the statute contradicts the statement in the opinion that "* * * it is the view in this jurisdiction that a pinball mahine is not a gaming device *per se* since its use may be solely for entertanment purposes. *People* v. *One Mechanical Device,* 11 Ill.2d 151." Moreover, the case cited does not support the statement. There the ruling of the circuit judge, that a particular pinball machine was a contraband gambling device, and so subject to confiscation and destruction, even in the absence of any evidence that it had ever been used for gambling purposes, was unanimously affirmed by the three judges of the appellate court. It was reversed in this court, however, on the ground that the device was "so constructed or devised as to make such result of its operation to depend in part upon the skill of the player."

Three of the judges of this court dissented from that conclusion. The authority of the Commission to prevent gambling in taverns is not restricted to the control of those gambling devices that are subject to confiscation and destruction as contraband. It can, in my opinion, prohibit other devices that peculiarly lend themselves to gambling

by the licensee or his patrons. The federal statute classifies coin operated machines into two categories, one of which, characterized as an amusement device, requires a $10 stamp, and the other, characterized as a gambling device, requires a $250 stamp. The rule of the Commission utilizes this classification, and treats the purchase of a $250 federal stamp as evidence of the purchase of a device that is suitable for gambling. The question to be decided is whether the classification thus adopted is reasonably related to the prevention of gambling on premises that are licensed for the sale of intoxicating liquor at retail. That the devices for which a $250 gambling stamp is required are those devices that are so designed that they lend themselves to gambling is apparent from the federal cases that are cited in the majority opinion.

For example, in *United States* v. *Nine Gambling Devices,* 59-2 USTC par. 15,257 (S.D. Ill. 1957) the pinball machine awarded up to 1000 'free replays" which were recorded on an illuminated score board. The replays could either be used by playing additional games or could be "knocked off" by a device which recorded them on a meter. There was a provision for multiple coin insertion which allowed the player to win additional free replays if he was successful. The court held that these features made the pinball machine a gaming device subject to the $250 tax. The court's reasoning was similar to that in *Turner* v. *United States,* 62-1 USTC par. 15,402 (D.C. Kan. 1962). "Generally a machine designed and intended for operation merely for amusement purposes will award the player a maximum accumulated total of 26 free games. On plaintiff's machine, if only one coin is inserted, the player can win not more than 4 free games on a single play; if an additional coin is inserted, he may win as many as 204 games on a single play and may accumulate a total of as many as 999 free games. The push button, or 'knock-off' button serves to release completely all free games so accumulated so as to render the

machine unplayable without the insertion of a coin; when that button is depressed, the meter automatically records the total free games so released. If a player accumulated 999 free games, it would require approximately 33 hours and 18 minutes of continuous and uninterrupted play to use up the free games, and then only if no additional free games were won. The 'knock-off button' for releasing free plays and the meter for recording the free plays released or the provision for multiple coin insertion to increase the odds serve no useful purpose on a machine designed merely for amusement and they increase the cost of the machine without increasing the income from the machine when used for amusement. Such devices are specially adapted for use as gambling devices."

In my view, devices of the kind described and dealt with in the federal decisions are contraband and subject to destruction under Illinois law. But if I am wrong as to that, it seems clear to me that those devices are of such a character that their possession, evidenced by the purchase of a $250 federal gambling stamp, may properly be the basis of a license revocation by the Commission.

I would affirm the decision of the appellate court.