TAYSIR A. YASIN, Plaintiff-Appellant, *v.* JANE BYRNE, Mayor of the City of Chicago, *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 82—2938

Opinion filed January 17, 1984.

Freeman, Atkins & Coleman, Ltd., of Chicago (John L. Gubbins and Eugene J. Schiltz, of counsel), for appellant.

James D. Montgomery, Acting Corporation Counsel, of Chicago (Jerome A. Siegan and Maureen Kelly Ivory, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

This action was brought by plaintiff Taysir A. Yasin, seeking a writ of *mandamus* to compel several officials of the city of Chicago to issue to him tax emblems for two electronic video games. The city had refused to issue emblems for the games on the ground that they were illegal gambling devices under section 28—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 28—2). The two principal issues addressed at trial were whether any skill is involved in playing the video games and whether the games could be altered to permit their use as gambling devices. The trial court issued a writ of *mandamus* as to one of the games but refused to issue the requested writ as to the other. Defendants appealed and plaintiff cross-appealed. Subsequently, defendants voluntarily dismissed their appeal, and only plaintiff's cross-appeal remains before this court.

In December 1981, plaintiff Yasin applied for and received an automatic amusement device operator's license from the city of Chicago. Plaintiff had purchased several of each of two coin-operated video card games produced by Computer Kinetics Corporation, a California company, with the intention of installing the games in public places in Chicago. The machines purchased by plaintiff were "Monte Carlo Blackjack," a video game which simulates the card game of blackjack, and "Draw 5," a video game which simulates the card game of draw poker. Plaintiff then applied for city tax emblems for the machines pursuant to chapter 104.2 of the Municipal Code of the city of Chicago, and submitted examples of each game with its owner's manual

to the Mayor's License Commission for inspection. Plaintiff was subsequently advised by mail that this application for tax emblems had been denied. No reasons were given by the Commission for the denial.

Plaintiff filed suit in the circuit court of Cook County, seeking a writ of *mandamus* compelling the issuance of tax emblems for the machines. Defendants' answer denied the material allegations of plaintiff's complaint and raised no affirmative defenses. Plaintiff made an oral motion to strike defendants' answer as insufficient, but withdrew the motion when the court refused to let plaintiff present his out-of-town witnesses at that time. Both parties moved for summary judgment. Both motions were denied and the case went to trial on the issue of whether the machines were illegal gambling devices under section 28—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 28—2) or whether they could be altered to permit their use as gambling devices.

At trial, expert testimony was heard as to several characteristics of plaintiff's machines. Richard Calverley, president of Computer Kinetics, testified that the machines were programmed to simulate exactly the card games of blackjack and draw poker; that skill is required to successfully operate the machines; and that the machines do not pay out, return coins, give free games or store point totals and cannot be modified or altered to do so. Mr. Calverley also testified that Computer Kinetics games are not comparable to or competitive with games that pay out or return coins. In addition, Mr. Calverley testified that a single-player version of "Monte Carlo Blackjack," called "Vega 21," had been approved for use in Illinois by the Attorney General of Illinois.

Ehud Kalai, an expert in applied mathematics and game theory, testified that skill is required to play blackjack successfully, and that greater skill is required in playing draw poker. Mr. Kalai operated the "Monte Carlo Blackjack" game and demonstrated to the court the element of skill involved. He also discussed the skill and strategy required to successfully play blackjack and draw poker. The "Draw 5" game was not demonstrated to the court.

Several police officers testified as to how various mechanical devices are used for gambling purposes and an expert in gambling casino auditing practices testified as to the infeasibility of using Computer Kinetics machines for gambling purposes.

After considering briefs and hearing closing arguments, the trial court found that "Monte Carlo Blackjack" is a game requiring skill and therefore that the city of Chicago improperly denied the amusement license for that game. The court ordered that a writ issue di-

recting the city to issue tax emblems for plaintiff's "Monte Carlo Blackjack" machines. The court held that "Draw 5" is a game of chance and denied the writ of *mandamus* as to that machine. Plaintiff appeals from this order.

Plaintiff first contends that the city waived any defenses to his petition by failing to assert in its answer that the tax stamps had been denied because plaintiff's machines were illegal gambling devices.

It is well settled that in a *mandamus* proceeding the burden of proof is on the petitioner to establish a clear legal right to the relief sought. (*People ex rel. Donnelly v. McHenry County Sheriff's Department Merit Com.* (1980), 83 Ill. App. 3d 957, 958, 404 N.E.2d 1033.) Plaintiff relies upon the cases of *People ex rel. Mercantile National Bank v. City of Chicago* (1941), 377 Ill. 573, 37 N.E.2d 151, and *City of Chicago v. People ex rel. Union Trust Co.* (1905), 215 Ill. 235, 74 N.E. 137, for the position that the city's failure to raise defenses in its answer bars any defense. However, this reliance is misplaced. *People ex rel. Mercantile National Bank* and *People ex rel. Union Trust Co.* involved *mandamus* proceedings in which the petitioner sought payment of outstanding judgments from the city. In each case the city admitted in its answer that it owed on the judgments. The city therefore had no justification for its failure to pay the judgments and the trial court properly entered the writ ordering payment. In each case, the material allegations of the petition were not denied by the city and these allegations were therefore considered to be true. See *People ex rel. Shell Oil Co. v. City of Chicago* (1972), 9 Ill. App. 3d 242, 292 N.E.2d 84.

In contrast is the instant case, in which the city's answer denied all the material allegations of the petition. The burden therefore remained upon plaintiff to establish a clear legal right to a writ of *mandamus*. (See *School Directors v. People* (1902), 106 Ill. App. 620, 622-23.) The parties proceeded to trial on the merits on these pleadings. We find that plaintiff's contention that the city waived all defenses by failing to raise in its answer reasons for its denial of the tax emblems is without merit.

Plaintiff next contends that the trial court erred in denying the writ of *mandamus* as to his "Draw 5" machines.

The only issue at trial was whether plaintiff's machines were illegal gambling devices as defined in section 28—2 of the Criminal Code of 1961. (Ill. Rev. Stat. 1979, ch. 38, par. 28—2.) The statute provides, in part, that its definition of a "gambling device" does not include

"(1) A coin-in-the slot operated mechanical device played for

amusement which rewards the player with the right to replay such mechanical device, which device is so constructed or devised as to make such result of the operation thereof depend in part upon the skill of the player and which returns to the player thereof no money, property or right to receive money or property." Ill. Rev. Stat. 1979, ch. 38, par. 28—2(a)(1).

This statutory exception has been interpreted to include pinball machines (*People v. One Mechanical Device* (1957), 11 Ill. 2d 151, 155, 142 N.E.2d 98; *White v. Ogilvie* (1964), 51 Ill. App. 2d 181, 188, 201 N.E.2d 122), and to exclude slot machines. Plaintiff argues that his machines fall within this statutory exception because they require skill to operate successfully and do not return money.

The testimony at trial established that both "Monte Carlo Blackjack" and "Draw 5" exactly simulate the card games for which they are respectively named. The machines are programmed to deal a fixed number of hands, five in the case of "Monte Carlo Blackjack," and to provide the player with a number of points with which to bet. The number of points initially provided depends on the number of coins inserted into the machine. A winning player is rewarded with extra hands in addition to the points won. The maximum number of extra hands which can be won with the "Monte Carlo Blackjack" machine is three. The testimony also established that these machines are not well suited to use in gambling enterprises because of their inability to return coins to winning players or to reliably keep track of point totals. In addition, experts testified as to the element of skill involved in the card games of blackjack and draw poker and this element of skill was demonstrated to the court through the operation of the "Monte Carlo Blackjack" machine. Expert testimony established that the elements of skill involved in the card games of blackjack and draw poker were also present in "Monte Carlo Blackjack" and "Draw 5."

After this evidence was heard, the trial court found that "Monte Carlo Blackjack" was a game requiring skill, as defined in the statutory exception, but that "Draw 5" was a game of chance and was therefore an illegal gambling device.

■■ We find that the decision of the trial court was not supported by the evidence and that the trial court erred in holding that "Draw 5" is an illegal gambling device. The record contains sufficient evidence to clearly show that the "Draw 5" machine comes within the statutory exception to section 28—2. The evidence shows that "Draw 5" exactly simulates the card game of draw poker, that draw poker is a game requiring skill and that the "Draw 5" machine does not return money, property or the right to receive money or property and

cannot be altered or modified to do so. While the "Draw 5" machine was not demonstrated to the trial court, the uncontradicted testimony of the various experts at trial established that the "Draw 5" machine is nearly identical mechanically to the "Monte Carlo Blackjack" game and would in fact require a greater degree of skill to play. The evidence does not support the distinction made by the trial court between the two machines. The court should have concluded that this evidence shows that the "Draw 5" machine falls within the statutory exception to the definition of a gambling device and that the city had no basis for denying tax emblems for plaintiff's "Draw 5" machines. It is clear that the trial court erred in denying the requested writ of *mandamus* as to these machines.

The decision of the circuit court denying the requested writ as to the "Draw 5" machine is reversed and the cause is remanded with directions to enter such writ.

Reversed and remanded.

HARTMAN, P.J., and DOWNING, J., concur.